341 So.2d 680 (1976)
In the Matter of Alfred Lee BOYD
v.
STATE of Alabama.
SC 1998.
Supreme Court of Alabama.
December 30, 1976.
Rehearing Denied February 4, 1977.
*681 Guy F. Gunter, III, of Maye, Melton, Kent & Gunter, Opelika, for appellant.
William J. Baxley, Atty. Gen. and Jane LeCroy Robbins, Asst. Atty. Gen., for the State, appellee.
MADDOX, Justice.
This appeal challenges the constitutionality of the juvenile transfer of jurisdiction statute (Title 13, § 364, Code). A brief statement of the case is necessary to pose and treat in context the issue presented.
A petition was filed in the juvenile court of Lee County, Alabama on June 5, 1976, alleging that Alfred Lee Boyd, age 15, was a delinquent child. The petition contained an allegation that Boyd had committed the offense of assault with intent to ravish. The juvenile court entered an order of temporary detention of the juvenile on June 6, 1976. The State, on June 10, 1976, filed a motion in the juvenile court for the transfer of the defendant from the jurisdiction of the juvenile court to the jurisdiction of the circuit court of Lee County, Alabama. A hearing was held in the juvenile court on the State's motion for transfer. The juvenile court judge found that the State had failed to prove that the juvenile Boyd could not be made to lead a correct life and could not be properly disciplined under the provisions of Title 13, §§ 350-383, Code; therefore, the juvenile court denied the State's motion for transfer. The State appealed to the circuit court.
The juvenile, through his appointed attorney, filed a motion to dismiss the appeal in which he claimed that the circuit court lacked jurisdiction. He also filed a motion to quash, in which he attacked the constitutionality of Title 13, § 364, as follows:
"4. That the provisions of Title 13, Section 364 require the Juvenile Court to make two findings of fact: (1) That the defendant is a delinquent child and (2) The defendant is incorrigiblehe can not be made to lead a correct life and can not be properly disciplined. This conclusion is supported by the case of Rudolph v. State, 286 Ala. 189, 238 So.2d 542 (1970) in which the court held: under our statute (Title 13, Section 354) the proceedings in the Juvenile Court are to determine whether the child so charged has committed unlawful acts alleged in the petition. Before a minor over 14 may be transfered *682 from Juvenile Court and tried in court having jurisdiction over the offense with which the child is charged, and before such child may be subjected to criminal prosecution like an adult, the court must first determine whether the child is a delinquent child.
"5. The words delinquent child are defined under the provisions of Title 13, Section 350(3) as follows: A delinquent child shall mean any child while under sixteen years of age violates any penal law of the United States or of this State, or any regulation, ordinance or law of any city, town or municipality, or who commits any offense or act for which an adult could be prosecuted in a method partaking of the nature of a criminal action or proceeding; or who is beyond the control of his parents, guardian or custodian, or who is otherwise incorrigible, or who is guilty of immoral conduct; or who is leading an idle, dissolute, lude or immoral life; or who engages in any calling, occupation, or exhibition punishable by law or is found in any place permitting for which an adult may be punished by law.
"6. That in Breed v. Jones, [421 U.S. 519], 95 S.Ct. 1779 [44 L.Ed.2d 346] (1975) the United [States] Supreme Court held that a State prisoner is put in jeopardy at a Juvenile Court adjudicatory hearing, whose object is to determine whether the defendant has violated a criminal law and as a result should stand prosecution as an adult after a finding that he was unfit for treatment as a juvenile. In footnote 16 of that opinion the United [States] Supreme Court cited Alabama as a jurisdiction that requires a finding of delinquency before the transfer of the juvenile to an adult court.
"7. That as a prerequisite for this Honorable Court to order a transfer of jurisdictions, the Court would be required to find that the defendant was a delinquent child and violated a criminal statute as alleged in the petition; that isassault with intent to ravish.
"8. That the Alabama transfer provision, Title 13, Section 364, is unconstitutional because it deprives the defendant of the constitutional protection against multiple trials in violation of the Fifth Amendment of the United States Constitution."
The juvenile court denied the juvenile's motion to quash, but also denied the State's motion to transfer. The circuit court denied the juvenile's motion to dismiss the appeal and motion to quash, which the juvenile refiled in circuit court, and ordered the defendant transferred to the jurisdiction of the circuit court of Lee County for trial as an adult.
Section 364, in pertinent part, provides:
"If, at any time, after thorough investigation or exercise of its disciplinary measures, the juvenile court . . . shall be convinced that a delinquent child, more than fourteen years of age, brought before it under the terms of this chapter cannot be made to lead a correct life and cannot be properly disciplined under the provisions of this chapter, the juvenile court . . . shall have authority to transfer the care of such delinquent to the jurisdiction of any other court in the county having jurisdiction of the offense with which said child is charged, there to be proceeded against according to law.. . ."
This section makes no reference to right of appeal by either party. The State claims the right of appeal of the juvenile court's adverse ruling pursuant to § 362, which, in pertinent part, provides:
"Any party aggrieved may take an appeal from any judgment or order of the court arising under provisions of this chapter to the circuit court of the county sitting as a court of equity. . . Upon appeal, the circuit court shall try the case de novo and shall proceed, under and in pursuance of the intent and terms of this chapter, to render such judgment as to it shall seem just and for the best interest of the child. . . ."
The State cites as authority the following cases: Seagroves v. State, 279 Ala. 621, 189 So.2d 137 (1966); Duck v. State, *683 278 Ala. 138, 176 So.2d 497 (1965). In each of these cases, the juvenile defendant appealed from the juvenile court's order of transfer. The introductory phrase, "Any party aggrieved," of § 362 indicates, on the surface that the right of appeal is available to either the defendant from an order of transfer or to the State from an order denying transfer.
As is apparent from the juvenile's motion to quash, he believes that the juvenile court was required by statute to find him delinquent because he had committed the offense of assault with intent to ravish before it could order a transfer. See paragraph No. 7 of his motion which is quoted above. If the juvenile is correct, the State could never proceed against a juvenile as an adult when he had committed a criminal offense because any adjudicatory finding in juvenile court that he had violated a criminal statute would cause jeopardy to attach. He could not then be prosecuted as an adult. Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975).
The record filed here is silent as to whether there was an adjudicatory finding of delinquency that Boyd had committed the crime of assault with intent to ravish. However, every indication is that there was no such adjudicatory finding.
As we read Breed v. Jones, the State is required to determine whether it wants to treat a juvenile within the juvenile court system before entering upon a proceeding that may result in an adjudication that he has violated a criminal law. As the Supreme Court noted in Breed v. Jones, 95 S.Ct., at page 1790:
"We note that nothing decided today forecloses States from requiring, as a prerequisite to the transfer of a juvenile, substantial evidence that he committed the offense charged, so long as the showing required is not made in an adjudicatory proceeding. See Collins v. Loisel, 262 U.S. 426, 429, 43 S.Ct. 618, 625, 67 L.Ed. 1062 (1923); Serfass v. United States, 420 U.S. 377, 391-392, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). The instant case is not one in which the judicial determination was simply a finding of, e. g., probable cause. Rather, it was an adjudication that respondent had violated a criminal statute."
Our review of the record does not show that either the juvenile court or the circuit court made an adjudicatory finding that Boyd was delinquent because he had committed the offense of assault with intent to ravish. If, in fact, there was an adjudication of delinquency on this charge which does not appear of record, the juvenile can file a plea of double jeopardy in the trial on the criminal charge, as was done in Breed v. Jones.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
HEFLIN, C. J., and BLOODWORTH, FAULKNER, ALMON, EMBRY and BEATTY, JJ., concur.
JONES and SHORES, JJ., dissent.
JONES, Justice (dissenting):
I respectfully dissent. I agree with defendant's contention that the legal impediment to the conclusion urged by the State is the constitutional prohibition against double jeopardy.
"That no person shall, for the same offense, be twice put in jeopardy of life or limb; but courts may, for reasons fixed by law, discharge juries from the consideration of any case, and no person shall gain an advantage by reason of such discharge of the jury." Art. 1, § 9, Constitution of Alabama of 1901.
The constitutional dilemma faced by the State is dramatized in its own brief. Under "Statement of the Facts" appears the following:
"[T]he chief probation officer of the Lee County Juvenile Court testified that according to the school records of Boyd, Boyd had been in trouble at school for fighting, bothering other students, sticking another student with a pencil, arguing, hitting another student with a guitar, and placing his head on a girl's *684 breast. Boyd was repeatedly suspended, chastized, and even spanked. Boyd was finally charged with [committing a criminal offense] . . . Boyd was adjudicated a delinquent child and was sent to King's Acres for evaluation, where he stayed for six weeks. The [criminal] charge . . . against him was heard. . . and Boyd was placed on probation for six months for the commission of that crime. The reports on Boyd to his probation officer were admitted as evidence for Boyd. No unfavorable reports were made against Boyd until he was charged with assaulting a twelve year old girl with intent to ravish." [Emphasis added.]
Under the "Argument" portion of the State's brief appears the following:
"At a hearing to determine whether a charge against a juvenile should be transferred to a court other than a juvenile court, two questions are presented: (1) whether the child is a delinquent child and (2) whether the child can be made to lead a correct life and can be properly disciplined.... A `delinquent child' is defined in Title 13, Section 350(3), ... as any child who while under sixteen years of age violates any penal law of this state. Thus Boyd was proved `delinquent' by the State's evidence which showed that he had committed the crime [13 months earlier]. The State also proved that Boyd had been charged with the assault with intent to ravish of a fourteen year old girl. At trial, Boyd objected to the State's introduction of any evidence concerning the assault with intent to ravish, thus the State did not go into details of the crime."[1] [Emphasis added.]
The State's awareness of the double jeopardy problem is evidenced at the Circuit Court hearing by the District Attorney's response to the double jeopardy defense argued by the juvenile's counsel. I quote from the record:
"[A]s I understand Mr. Gunter's [the juvenile's court-appointed attorney] position, he would say that this Court would. . . have to . . . declare that this individual at this trial today, Alfred Boyd, is a delinquent in that if the Court would do that, then, of course, jeopardy would attach and any further prosecution by the State of Alabama would be unauthorized. And, of course, the State would agree with that contention, and we do not ask that Alfred Boyd be declared a delinquent at this hearing today.... [W]e do not believe that Title 13, Section 364, while it refers to a delinquent child, is referring to a delinquent child as being one who is just immediately been declared a delinquent in the motion to transfer hearing but, in fact, refers to a child that has been declared a delinquent on some prior occasion . . ..
". . .
"If it please the Court, the State does not plan to offer evidence at this time with regards to any of the details of the charge of assault with intent to ravish in the petition presently on file against this individual. The State plans only to offer evidence of the prior delinquency of the child and the fact that he is incorrigible and not subject to existing juvenile procedures."
The first horn of this dilemma is that such lack of proof leaves the Circuit Court's finding of delinquency without supportive evidence. On the de novo appeal, the burden of proof was on the State to first show that the juvenile defendant has committed a criminal act for which he could be tried as an adult. Rudolph v. State, 286 Ala. 189, 238 So.2d 542 (1970). Otherwise stated, the alleged offenseassault with intent to ravish shown on the petition as the conduct constituting "delinquency" must be proved *685 or else the Circuit Court is without jurisdiction.
The mere showing of some prior adjudication of delinquency is itself subject to the double jeopardy defense; and any effort to meet this first requirement by proving one or more of the remaining statutory definitions of "delinquency" (e. g., "immoral," "idle," "dissolute," "lewd," etc.) is fraught with Due Process problems because no such conduct is charged in the petition. Title 13, § 350(3). Additionally, as I have already observed, such proof, if allowed, would still leave the Circuit Court without jurisdiction. An affirmative finding by the Circuit Court under any of the statutory definitions of delinquency, other than the commission of a crime, could result only in a retransfer of the case by the Circuit Court back to the Juvenile Court, rendering the entire transfer proceedings futile.
Unless the first element (delinquency consisting of a criminal act) is proved, the second element (incorrigibility) is never reached. Seagroves v. State, supra.
The second horn of this dilemmathe State's attempt to avoid double jeopardy by not proving the specific act of delinquency alleged in the petitionis likewise fatal to the State's transfer attempt. The juvenile defendant does not have to await his trial as an adult in the Circuit Court to raise as a defense the constitutional prohibition against the risk of twice being tried and convicted for a single offense. Rather, this constitutional defense is available at the transfer hearing on the de novo appeal; and this for the reason that jeopardy attached at the earlier Juvenile Court hearing when it was determined: (1) that the 15-year-old was a "delinquent child"; (2) that the motion to transfer be denied; and (3) that the State had failed to prove the juvenile could not be made to lead a correct life and could not be properly disciplined under the juvenile code.
The adjudication of delinquency by the Juvenile Court, which is statutorily required in the transfer determination, contains all the classical incidents of jeopardy to effectively bar another trial for the same offense. Assumingas does the majority opinionwe were inclined to rule otherwise, our holding of double jeopardy has already been mandated by the United States Supreme Court's decision in an analogous factual situation, grounded on the Fifth Amendment to the United States Constitution, in Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). There, Chief Justice Burger, speaking for the Court, said:
"[T]he risk to which the term jeopardy refers is that traditionally associated with `actions intended to authorize criminal punishment to vindicate public justice.'. . . Because of its purpose and potential consequences, and the nature and resources of the State, such a proceeding imposes heavy pressures and burdens psychological, physical, and financialon a person charged. The purpose of the Double Jeopardy Clause is to require that he be subject to the experience only once `for the same offence.' . . .
". . .
"[I]n terms of potential consequences, there is little to distinguish an adjudicatory hearing such as was held in this case from a traditional criminal prosecution. For that reason, it engenders elements of `anxiety and insecurity' in a juvenile, and imposes a `heavy personal strain.' . .
"We deal here, not with `the formalities of the criminal adjudicative process,'. . . but with an analysis of an aspect of the juvenile court system in terms of the kind of risk to which jeopardy refers. Under our decisions we can find no persuasive distinction in that regard between the proceeding conducted in this case . . . and a criminal prosecution, each of which is designed `to vindicate [the] very vital interest in enforcement of criminal laws.' . . . We therefore conclude that respondent was put in jeopardy at the adjudicatory hearing. Jeopardy attached when respondent was `put to trial before the trier of the facts.' . . . that is, when the Juvenile Court, as the trier of the facts, began to hear evidence. . . ."
*686 Additionally, footnotes (16 and 19) to the Breed case contain two separate references to the Alabama transfer statute:
"[T]wo jurisdictions appear presently to require a finding of delinquency before the transfer of a juvenile to adult court. Ala. Code. Tit. 13, § 364 (1958) [see Rudolph v. State, 286 Ala. 189, 238 So.2d 542 (1970)] . . ."
"[A]pparently only three States presently require that a hearing on the juvenile petition or complaint precede transfer. . . [see Rudolph v. State, 286 Ala. 189, 238 So.2d 542] . . ."
I emphasize, however, that, while I am in complete agreement with the holding and rationale of Breed, I have looked to and found in our own State Constitution adequate safeguards against being put twice in jeopardy of prosecution for a single criminal charge.
What the majority decision overlooks, in my opinion, is that this is not a case in which constitutional standards have been judicially ingrafted into an otherwise unconstitutional statute; and the State does not so contend. The transfer statute was followed by the State in its effort to transfer the case from Juvenile to Circuit Court; and this, not because I say so, but because the State frankly admits that it did. In following the statute, an adjudication of "delinquency" was made by the Juvenile Court on the State's petition for transfer. This is not even a contested issue in the case. In this posture, Breed stands foursquare against the majority's denial of relief.[2] And this defect is not cured by the State's effort to avoid a "delinquency" determination in the transfer appeal hearing in Circuit Court. As stated earlier, jeopardy had already attached.
While, absent a showing of delinquency in the commission of a criminal offense in the transfer hearing in Circuit Court, I cannot see how the Circuit Court has jurisdiction to proceed, the double jeopardy defense will again avail itself on the trial of this cause on its merits. There, on remand, the double jeopardy plea can be supported by evidence of the Juvenile Court's transfer hearing which is missing in this record because of the de novo nature of the Circuit Court hearing now before us.
As I have previously noted, I do not intend to comment on the constitutionality of the transfer provision of the juvenile code which will shortly become effective in Alabama. It is interesting to observe, however, that all references to an adjudication of the juvenile as a delinquent have been deleted in this provision of the new Code, which, in my opinion, is an obvious attempt on the part of the legislature to comport to the constitutional requirements for transfer spelled out in Breed.
I would hold that Title 13, § 364, has been unconstitutionally applied in this case. I would reverse and remand this cause to the Circuit Court of Lee County for retransfer to the District Court of Lee County for further proceedings.
SHORES, J., concurs.
NOTES
[1] The record shows that the only question relative to the criminal charge alleged in the petition to which the juvenile's attorney objected was one which asked the probation officer what the petition said. Upon objection, the District Attorney responded, "We will withdraw that and ask that the Court take judicial notice of the petition without going into the details."
[2] For an excellent discussion of this entire problem, see W. Kimmelman, Double Jeopardy: A Political perspective, 5 Cumb.-Sam.L.Rev. 369 (1975).