Kenneth JACKSON et al., Petitioners,
Appellees,

v.

JUSTICES OF the SUPERIOR COURT
OF MASSACHUSETTS, Respondents,
Appellants.

No. 76–1524.

United States Court of Appeals,
First Circuit.

Jan. 14, 1977.

Certiorari Denied April 18, 1977.
See 97 S.Ct. 1666, 1667.

Barbara A. H. Smith, Asst. Atty. Gen.,
Chief, Criminal Appellate Section, Boston,
Mass., with whom Francis X. Bellotti, Atty.
Gen., Donald P. Zerendow, Asst. Atty. Gen.,
Acting Chief, Crim. Bureau and Michael C.

Donahue, Asst. Atty. Gen., Boston, Mass., were on brief, for appellants.

Russell K. Dunning, Boston, Mass., for appellees.

Before COFFIN, Chief Judge, and ALDRICH and CAMPBELL, Circuit Judges.

ALDRICH, Senior Circuit Judge.

In this case we are faced with the question whether the decision of the Supreme Court in *Breed v. Jones*, 1975, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346, is to be given retroactive application. *Breed* dealt with the impact of the double jeopardy clause of the Fifth Amendment on the procedure by which it is determined that a juvenile should be tried in adult court rather than treated as a juvenile. There are basically two ways that this determination can be made. One is to commence with a purely investigatory hearing in the juvenile court directed solely to the question of transfer. The other is by a trial on the merits in the juvenile court, following which the court may sentence the defendant as a juvenile, or dismiss the proceedings and bind him over to the general sessions, in Massachusetts, the superior court, for a full criminal trial, leading to a different type of sentence. In *Breed*, a unanimous Court held that to subject the defendant to an adjudicatory proceeding, other than one limited to the question of transfer, and then, instead of sentencing, transfer him to an adult trial, amounts to double jeopardy.

The *Breed* Court made no comment with respect to retroactivity. When the Massachusetts Supreme Judicial Court was faced with this question it ruled that *Breed* should not be applied retroactively, and that persons such as the petitioners herein may be put to trial in the superior court. *Stokes v. Commonwealth*, Mass.Adv.Sh.
(1975) 3030, —— Mass. ——, 336 N.E.2d 735; *Commonwealth v. A Juvenile (No. 2)*, Mass. Adv.Sh. (1976) 1854, —— Mass. ——, 351 N.E.2d 521. The present habeas corpus proceeding was filed in the district court in the form of a class action on behalf of all persons in Massachusetts who had been bound over following juvenile court proceedings prior to the decision in *Breed*, but who have not yet been tried in the superior court. The district court, at an early state, stayed all state proceedings against the members of the class, pending its final determination of the claims. Respondent Justices, hereinafter the Commonwealth, appeal from the stay order. Because of the question's importance, we requested both sides to brief and argue the merits, and they have complied.[1]

■ Inasmuch as none of the petitioners has yet been tried in the superior court, they first argue that even prospective application of *Breed* would bar their trials. They assert that the Supreme Court has ruled that even nonretroactive decisions are to be applied to cases where the "violation" occurs after the date of the decision in question, *see, e. g., Desist v. United States*, 1969, 394 U.S. 244, 253, 89 S.Ct. 1030, 22 L.Ed.2d 248; *Stovall v. Denno*, 1967, 388 U.S. 293, 296, 87 S.Ct. 1967, 18 L.Ed.2d 1199, and that in the instant case the "violation" is not the juvenile proceeding but the superior court trial. We think this argument misconstrues the Court's decisions. The Court's focus has been on "the moment at which the discarded standards were first relied upon," *Jenkins v. Delaware*, 1969, 395 U.S. 213, 218, 89 S.Ct. 1677, 1680, 23 L.Ed.2d 253, the reason being that a nonretroactive decision ought to be applied only to cases where the law enforcement agencies had the opportunity to conform their conduct to

1. The Commonwealth, nevertheless, contends that under *Younger v. Harris*, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, we should vacate the stay without reaching the merits. In view of the Massachusetts court's outright rejection of retroactivity, precluding any realistic opportunity for petitioners to assert their *Breed* claim in their criminal prosecutions, *see id.* at 45, 46, 91 S.Ct. 746, we doubt that we would accept this contention if we felt that retroactivity were called for, but our reaching the merits will not, we suspect, incur the Commonwealth's serious objections under the circumstances. Petitioners never have objected. We may, of course, decide the merits, since only a question of law is involved. *Hagopian v. Knowlton*, 2 Cir., 1972, 470 F.2d 201.

the new standards, *id.* In the present case that point would be the time of the juvenile proceedings, for once an adjudicatory hearing was held and a decision to transfer made, the Commonwealth could not prosecute the petitioners in conformity with *Breed.* The case is on all fours with *Jenkins,* ante, where the Court held that statements obtained from defendants without *Miranda* warnings, *see Miranda v. Arizona,* 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, could be used in retrials occurring after the date of the *Miranda* decision.

Petitioners seek to distinguish *Jenkins* on the ground that the "violation" in *Jenkins* was the interrogation without *Miranda* warnings, while in the instant case the "violation" would be the superior court trial. However, an interrogation without *Miranda* warnings is not, in itself, a violation of the Fifth Amendment; it is the use of such statements in his criminal trial that compels the defendant "to be a witness against himself". Although in *Jenkins,* as here, it is the post-decision conduct—the retrial in *Jenkins,* or the superior court trial here— which constitutes the "violation," the point of reliance is the pre-trial conduct—the interrogation in *Jenkins,* or the juvenile proceedings here. Thus, a mere prospective application of *Breed* would not bar petitioners' superior court trials.

Ordinarily, the choice between retroactivity and prospectivity of a new rule turns on consideration of three factors: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." *Stovall v. Denno,* ante, 388 U.S. at 297, 87 S.Ct. at 1970. Petitioners, however, relying on *Robinson v. Neil,* 1973, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29, contend that double jeopardy claims are sui generis, and that decisions invalidating state procedures under the double jeopardy clause must, without more, be given retroactive application. It is true that the Court in *Robinson* stated that the usual retroactivity analysis was not appro-priate in deciding that retroactive effect was to be given to the decision in *Waller v. Florida,* 1970, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435, barring the trial on state charges of persons already tried and convicted on municipal charges for the same acts, 409 U.S. at 507, 93 S.Ct. 876, but it is equally true that the *Robinson* Court eschewed "an ironclad . . . classification of cases" for retroactivity analysis, *id.* at 509, 93 S.Ct. at 878. We see nothing in *Robinson* to indicate disapproval of the Court's earlier statement that "the retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based." *Johnson v. New Jersey,* 1966, 384 U.S. 719, 728, 86 S.Ct. 1772, 1778, 16 L.Ed.2d 882. In the case at bar we face a more complex, and at the same time a less severe, situation than that in *Robinson,* where the issue was whether persons already tried, convicted, and punished could be again put to trial and punished for the same conduct. *Breed* does not preclude separate juvenile and adult proceedings; rather, it closely limits the issues which may be considered in the first proceeding. We consider the question whether the Commonwealth's failure to anticipate those limits should produce a windfall to the petitioners, such that even if guilty they will not even be punished once, to be a matter not susceptible to a quick answer based on the constitutional label involved.

Restating the *Stovall* tests to fit the present case, our questions are: (a) What would be the effect on defendants of not applying *Breed* retroactively? (b) Were the Massachusetts legislature and judiciary reasonable in not anticipating the *Breed* ruling? (c) What would be "the effect on the administration of justice of a retroactive application"? The last question is readily answered. We learned at oral argument that in four of fourteen counties in Massachusetts some eighty juveniles had been ordered transferred and not yet tried. Doubtless, there must be many more elsewhere. Doubtless, too, there must be many persons presently serving adult sentences who will seek release under a retroactive

interpretation because of having been transferred from the juvenile court. We must also observe that all such persons were transferred to the regular criminal sessions because they were regarded as sufficiently serious offenders to be considered unlikely candidates for rehabilitation through the juvenile system. It would be impossible to overestimate the seriousness of affording retroactivity to the *Breed* rule.

■■■■ We turn to the joint questions of the newness, vel non, of the *Breed* rule, and the reasonableness of the Massachusetts belief that its juvenile procedure was one continuing jeopardy, it being clear that unless a decision makes new law it cannot be given only prospective effect. *Michigan v. Payne,* 1973, 412 U.S. 47, 50–51, 93 S.Ct. 1966, 36 L.Ed.2d 736; *Milton v. Wainwright,* 1972, 407 U.S. 371, 381–82 n. 2, 92 S.Ct. 2174, 33 L.Ed.2d 1 (Stewart, J., dissenting); *Chevron Oil Co. v. Huson,* 1971, 404 U.S. 97, 106, 92 S.Ct. 349, 30 L.Ed.2d 296; *Desist v. United States,* ante, 394 U.S. at 247–48, 89 S.Ct. at 1030. While, concededly, *Breed* was not a case, which, for example, by overruling prior Supreme Court decisions manifestly marked "a clear break with the past," *Desist v. United States,* ante, at 248, 89 S.Ct. at 1032, we do not believe that it was so clearly a mere application of established principles that we could apply it retroactively without further analysis. Prior to *Breed,* decisions on the impact of the double jeopardy clause on transfers from juvenile to adult courts appear to have been limited to state court rulings upholding transfer proceedings against double jeopardy attack. The landmark Supreme Court decision bringing juvenile proceedings within the scope of constitutionally mandated criminal procedures, *In re Gault,* 1967, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, is less than a decade old, and *Breed* can be seen as a decision settling one of the many questions left unresolved

in its wake. Perhaps a more perceptive consideration of the impact of *Gault* would have, even before *Breed,* led to the conclusion that transfer procedures such as Massachusetts employed could not withstand constitutional scrutiny, but we must attach weight to the number of courts which, prior to *Breed,* failed to take that step. *See* cases cited in *A Juvenile,* 1974, 364 Mass. 531, 306 N.E.2d 822, 829. The fact that *Breed* may have been to some extent foreshadowed does not require its retrospective application. *Desist v. United States,* ante, 394 U.S. at 248, 89 S.Ct. 1030.

This brings us to the foremost consideration under *Stovall,* whether the purpose of the new rule would be substantially frustrated by denying retroactive application. *Desist v. United States,* ante, at 249, 89 S.Ct. 1030. In *Breed* the Court identified two evils in the procedure of transfer after an adjudicatory hearing, the elimination of which may be considered the purpose of the decision: (1) that the defendant is twice subjected to the "heavy pressures and burdens—psychological, physical, and financial" incident to trial, 421 U.S. at 530, 95 S.Ct. at 1786 and (2) that the defendant in the juvenile proceeding is faced with the dilemma of either standing mute and risking an adverse disposition or defending on the merits and possibly "prejudicing his chances in adult court if transfer is ordered" by giving the prosecution an opportunity to review his defense in advance, *id.* at 540, 95 S.Ct. at 1791.

We consider first whether the purpose of eliminating the stress of a second trial will be fostered by retroactive application of *Breed.* As we previously noted, there are two classes of possible beneficiaries of retroactive application; those who have already been tried in superior court after transfer, and those who, liked petitioners herein, have been ordered transferred but have not yet been tried.[2] As to those al-

---

2. Although only the latter are before us as petitioners in the instant suit, if *Breed* is held retroactive, presumably it will be equally claimed by those already tried and serving sentence. To anticipate for a moment, we use the word "claim" advisedly. We do not decide in this case that a juvenile who has already been tried, particularly if tried pre-*Breed,* necessarily stands in the same position as one not yet tried. There may well be a difference between past reliance and the right to make use hereafter of

ready tried, we face a *fait accompli*—the stresses and burdens of trial have already been incurred. Retroactive application of *Breed* cannot undo this, and thus would not serve the first purpose of the decision. *See Linkletter v. Walker*, 1965, 381 U.S. 618, 637, 85 S.Ct. 1731, 14 L.Ed.2d 601.

As to those not yet tried, the ordeal of a second trial can be prevented. The question is whether the Commonwealth's interest outweighs the petitioners' interest in being free from this burden. The *Breed* decision holds that this interest is sufficiently weighty to preclude the states from adopting a procedure which imposes this double stress, but it is a different question whether the interest is so compelling that it requires the release of the petitioners, now that it is too late to prosecute them in a single proceeding.[3] The rule here, of course, is not absolute. It has long been the law that the double jeopardy clause does not bar a retrial after a mistrial has been declared without the defendant's consent if "there is a manifest necessity for the [mistrial], or the ends of public justice would otherwise be defeated." *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (Story, J.). Even where a mistrial was the result of some prosecutorial error, retrial is not always barred. Although a mistrial caused by a problem which the prosecutor knew of before the trial began prevented a retrial in *Downum v. United States*, 1963, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100, where a mistrial was declared due to a defect in the indictment which was not discovered until after the jury was empaneled the Court held that a retrial was permissible, *Illinois v. Somerville*, 1973, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425. Drawing up an indictment improperly is not conduct which could be condoned in advance, but once it had occurred, and could not be undone, the defendant's interest in

avoiding the personal strain of a second proceeding was not considered sufficient to preclude his prosecution. Similarly, while *Breed* prevents the Commonwealth from hereafter subjecting juveniles to the stresses of two adjudicatory proceedings, we believe that "the ends of public justice" would be unwarrantedly frustrated by barring petitioners' superior court trials, now that it is too late to prosecute them in a single trial, solely to avoid the pressures and burdens of a second trial.

The second purpose of *Breed*—avoiding the unfairness of making the defendant "tip his hand" before trial—can call for relief from pre-*Breed* proceedings, at most, only in cases where hand-tipping occurred. Whether or not the defendant was prejudiced, and if so, to what extent, depends on precisely what took place in the juvenile court, and whether the prosecution thereby gained, and later used, a tactical advantage in the adult trial. If this benefit to the state can be redressed, or obviated, on an individual basis, there is no need for retroactivity at all.

The Court has uniformly held that where those convicted prior to decisions adopting rules designed to prevent the possibility of unfairness may make a particularized showing of prejudice, this is sufficient. Thus in *Johnson v. New Jersey*, ante, the decisions in *Escobedo v. Illinois*, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and *Miranda v. Arizona*, ante, were held nonretroactive, defendants still having the opportunity to show that their confessions were involuntary. In *Stovall v. Denno*, ante, where the requirement of counsel at pretrial confrontations for identification established in *United States v. Wade*, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and *Gilbert v. California*, 1967, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, was held nonretroac-

---

benefits acquired from juvenile proceedings contrary to *Breed*.

**3.** The fact that defendant Jones secured habeas corpus relief in *Breed* does not answer the question. The Court has recognized the anomaly which results from denying general retroac-

tive application, yet applying the new rule in the case in which it is announced, but has indicated that the anomaly is a necessary evil of "adherence to sound principles of decision-making." *Stovall v. Denno*, ante, 388 U.S. at 301, 87 S.Ct. at 1972.

tive, the Court went on to consider whether the confrontation at issue in that particular case was so suggestive and error-prone as to amount to a denial of due process. The decision in *McCarthy v. United States*, 1969, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, holding that a defendant whose guilty plea was accepted in violation of F.R.Crim.P. 11 must be allowed to replead, was held non-retroactive in *Halliday v. United States*, 1969, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16, the Court noting that the voluntariness of a particular defendant's plea was still open to attack. *North Carolina v. Pearce*, 1969, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656, requiring that the judge state his reasons for imposing a more severe sentence on retrial after appellate reversal of his conviction, was held nonretroactive in *Michigan v. Payne*, ante, where the Court noted that the defendant could still show that his sentence was infected by vindictiveness and observed that,

> "It is an inherent attribute of prophylactic constitutional rules, such as those established in *Miranda* and *Pearce*, that their retroactive application will occasion windfall benefits for some defendants who have suffered no constitutional deprivation." 412 U.S. at 53, 93 S.Ct. at 1970.

The balance of these matters may not compel a single answer, but we believe it reasonably permits one. The seriousness of the impact on the state of granting retroactivity is obvious. The most significant aspect of denying it, so far as petitioners are concerned, would be if the state obtained some benefit from disclosures made at the initial hearing. Since this is remediable, general retroactivity would be overkill; the extent, if any, of the state's undue advantage may be determined on an individual, case by case basis.

There remains the question of how this should be accomplished. Manifestly, not in a class action. Manifestly, too, it is relieve that should first be sought in the state court. Cf. *Jackson v. Denno*, 1964, 378 U.S. 368, 393, 84 S.Ct. 1774, 12 L.Ed.2d 1178. While the Massachusetts court had, in previous actions, denied retroactive application of *Breed*, this more limited relief has never been denied. It is not for us to assume that it will be. On this basis the present action is premature even as to the named petitioners.

We add that we have not made any final analysis of what, if anything, a transferred juvenile can, or must show to establish that his adult trial was fundamentally unfair due to the advantage which the state incurred at his juvenile hearing. It is sufficient for the moment that this must be his path, as distinguished from asserting general retroactivity.

The stay will be vacated in ten days, at which time the district court is directed to dismiss the complaint.

COFFIN, Chief Judge, dissenting.

Although I am in sympathy with the result reached by the court in this deeply troubling case, I have difficulty with its holding that *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), does not prohibit Massachusetts from commencing adult criminal prosecutions against petitioners. Since I agree with the suggestion in footnote 1 of the court's opinion that *Younger v. Harris* does not bar this suit,[1] I

---

1. Although the Supreme Court has never addressed this point, the most recent interpretations of *Younger's* doctrine of equitable restraint suggest to me that it does not bar federal intervention in pending state criminal proceedings when the highest court of the state has conclusively rejected the federal claim and when there is no reason whatsoever to believe that the state court will reconsider its earlier rulings. *See Schlesinger v. Councilman*, 420 U.S. 738, 756, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); cf. *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). Whether or not there is to be a general "futility" exception to the *Younger* doctrine, an exception seems appropriate in the case of double jeopardy claimants who are to be denied the opportunity in the state court system to demonstrate that they have a right not to be retried. Cf. *United States ex rel. Webb v. Court of Common Pleas*, 516 F.2d 1034, 1037 (3d Cir. 1975).

would reluctantly uphold the stay and allow further proceedings to be held.

I recognize the undesirable consequences of holding *Breed* retroactive, but I think Mr. Justice Rehnquist's opinion for a unanimous court in *Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973) virtually compels the conclusion that *Breed* is retroactive. In *Robinson*, the issue was the retroactivity of *Waller v. Florida*, 406 U.S. 916, 92 S.Ct. 1800, 32 L.Ed.2d 115 (1972) which held that the double jeopardy clause prohibits a state from prosecuting an individual for an offense which had previously been the subject of a municipal prosecution. In 1962, Robinson had been tried and convicted in municipal court for three counts of assault and battery, and he was fined $50 on each count. Thereafter, he was tried upon state charges and was convicted and sentenced for up to 25 years in jail. The Court held *Waller* retroactive and ordered that the state conviction be vacated if the state and municipal offenses were found to be the same. The Court refused to apply the three prong *Linkletter-Desist* criteria, reasoning that they had no applicability to rules that in practice prevent a trial from taking place at all, rather than merely prescribing procedural rules. *Id.* 409 U.S. at 510, 93 S.Ct. 876.[2]

I am not persuaded by the court's attempt to distinguish *Robinson* on the ground that the retroactive application of *Breed*, as was not the case with the retroactive application of *Waller* in *Robinson*, will make it impossible for the Commonwealth to impose sanctions on any of the petitioners. The *Breed* Court left no doubt that under California's system there was no bar to further juvenile proceedings against successful juvenile double jeopardy claimants. 421 U.S. at 541, 95 S.Ct. 1779. Massachusetts' pre-*Breed* system did differ from California's,[3] but the differences are not significant. I see no constitutional impediment to further juvenile proceedings against those of the petitioners who are still juveniles,[4] and I believe the Massachusetts statutes can be construed to authorize such proceedings. But even if it were the case that none of the petitioners could hereafter be punished, I am not sure it would follow that *Robinson* is distinguishable. The *Robinson* Court recognized that its ruling seriously prejudiced the state's interest in imposing appropriate punishments upon wrongdoers; it observed that its ruling gave Robinson a "relatively painless form of immunity" ($150 in fines) from state prosecutions for what must have been serious offenses. *See* 409 U.S. at 510, 93 S.Ct. 876. I cannot imagine that *Robinson* would

2. The *Robinson* Court concluded that the state was unjustified in relying upon the belief that the state and the municipality were, like the state and the federal government, *see Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), separate sovereigns for purposes of the double jeopardy clause, and it intimated no view on the weight which should be accorded justifiable reliance in determining retroactivity. I too need not face that question. Whatever else might be said about Massachusetts' reliance on the concept of "continuing jeopardy", which has never attracted a majority of the Court, it is certainly no more reasonable than Florida's reliance on the "dual sovereignty" of its state and municipal governments.

3. Unlike the earlier California practice, a pre-*Breed* Massachusetts juvenile court would order a transfer without making an express finding of guilt. The Massachusetts court would, as a concomitant to the transfer, dismiss the juvenile complaint and cause an adult complaint to be issued.

4. I see no double jeopardy bar to further *juvenile* proceedings against petitioners. Insofar as they might object to such proceedings, they are in a position which, for double jeopardy purposes, is identical to that of a criminal defendant who has succeeded in having a judgment of conviction set aside. Here, petitioners are objecting to the disposition of the juvenile proceedings. If the objections have merit, their cases can be remanded for further proceedings in the juvenile court. *See Breed v. Jones; supra; North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

That the juveniles' complaints were formally dismissed without a determination of guilt presents no constitutional problems. The dismissals clearly arose neither from what could have been a favorable determination on the merits, *compare United States v. Jenkins*, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), nor from any judicial or prosecutorial overreaching, *see Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973).

have been decided differently if the municipal prosecution had been dismissed with prejudice after jeopardy had attached, for I doubt that a distinction between relatively painless immunity and completely painless immunity can possess constitutional significance.

I also am unable to accept the suggestion that *Breed* can be characterized as a prophylactic rule directed primarily at making the adult trial "fairer" by reducing the need of the juvenile to "tip his hand" at the transfer hearing. *Breed*, like *Waller* announces a rule which prevents the states from unconstitutionally placing an individual in jeopardy twice. Although avoiding "handtipping" is a value protected by the double jeopardy clause, it is not the primary one. If it were the case that a second trial would result in undue interference with the constitutionally protected interest only when no handtipping occurred at the first proceeding, *Robinson* presumably would have been decided differently: the case would have been remanded for a determination whether the municipal prosecution had prejudiced Robinson's subsequent state proceeding.

I would affirm the judgment of the District Court.