This is an appeal from a conviction for rape and a twelve year sentence. At trial and on appeal the appellant is represented by court appointed counsel.
On January 18, 1975, the prosecutrix went to Robby's Game Room in Tarrant City, Alabama. Around 10:00 o'clock that night a friend of hers introduced her to the appellant. The appellant and three other male youths were going to take the friend of the prosecutrix to her home and offered to take the prosecutrix home. The prosecutrix accepted the ride with her friend and her new acquaintances.
The four young men took the two girls to a wooded area where each male, including the appellant, raped the prosecutrix. The appellant physically and repeatedly struck the prosecutrix about her face in an effort to subdue her and force her to submit to the sexual assaults of himself and his friends.
Tony Smith, one of three youths who raped the prosecutrix, testified for the appellant. He stated that the prosecutrix told him that night that she had taken twelve "hits" of "speed" and was high. She voluntarily went "parking" with them into the wooded area to drink some beer and, after they stopped, voluntarily went "walking around" with the appellant and another youth, Charles Darwin. Smith testified that after the prosecutrix returned to the car she voluntarily had sex with him. He did not notice any bruises or swollen areas on her face that night.
 I
The appellant contends that he was placed in double jeopardy by his trial because of the findings and adjudications made in juvenile proceedings in Family Court which preceded his trial as an adult in the Circuit Court of Jefferson County.
The appellant's contentions necessitate a review of the procedure followed in this case. On January 21, 1975, a complaint was filed in the Family Court of Jefferson County charging that the appellant, a fourteen-year-old child, was "delinquent" in that he did rape the prosecutrix.
An "adjudicatory hearing" was held in the Family Court of Jefferson County at which time the complaints were read to the *Page 300 
appellant who entered a plea of "truth", admitting the allegations of each complaint. On that basis the judge of the Family Court entered the following order.
 "This cause coming on to be heard, and the said child being present in court, and his father, mother and attorneys being present with him, and the court having first explained the nature of the proceedings to each of them; said child admits the allegations contained in the petition filed herein. Having heard the evidence in this cause, including the following witnesses, ________ and having considered same, and it appearing to the court that said child is a delinquent child, male, under 16 and about 14 years of age, and in need of the care and protection of this court as alleged in the petition; it is therefore ordered, adjudged and decreed by the court that the said child is a ward of this court, and it further appearing to the court that it is to the child's best interest, the said child is hereby committed to Juvenile Hall and this case is continued to April 4, 1975, at 2:00 P.M. for disposition."
On April 4th a "transfer hearing" was had and the appellant was ordered transferred to the jurisdiction of the Circuit Court to be treated as an adult. The record reflects that:
 "Upon hearing the sworn testimony, including that of Patricia Ann McCrary, Vickie Triplett, Joan Mims, and James Dupree, the records and exhibits admitted in evidence, the oral arguments of the attorneys and careful consideration of the same, and
 "Upon it being shown that said child was placed on probation by this court on April 5, 1974, that he was discharged from probation on August 16, 1974, that he was found delinquent due to an act of homicide on December 23, 1974, at which time he was committed to the Alabama Boys Industrial School from which he escaped on January 10, 1975, and on this date he has admitted to two charges of Rape and two charges of Assault and Battery which displayed a severe lack of self-control over his emotions and behavior,
 "The Court is convinced that said minor cannot be made to lead a correct life and cannot be properly disciplined under the Juvenile Court Laws, the matter is hereby transferred to the Criminal Division of the Tenth Judicial Circuit of Alabama as provided by Title 62, Section 325, Code of Alabama 1940, recompiled 1958."
The May 1975 session of the Grand Jury returned an indictment against the appellant. Upon arraignment the appellant pled not guilty.
On the day the case was scheduled for trial defense counsel filed a Plea of Autrefois Convict and a Motion to Quash the indictment, both pleadings raising a defense of former jeopardy.
Relying on Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779,44 L.Ed.2d 346 (1975), the thrust of the appellant's argument is that he was first convicted and adjudged guilty of the rape in Family Court and thereafter again tried and convicted in Circuit Court.
Testimony was presented on the plea and the motion. John Fox, a deputy public defender, represented the appellant in Family Court. He testified that an "Adjudicatory Hearing" was held in that court. That hearing is for the purpose of taking pleas — either a "true" or a "not true" plea. A "true plea" is the same as a guilty plea in "adult court", and an admission of the charges pending against the minor. Testimony may also be taken at an adjudicatory hearing and some people refer to is as a "trial".
At the hearing on the motion to transfer, testimony was taken as to whether the appellant could be made to lead a "correct life".
The Deputy District Attorney who represented the state in the Family Court testified that the purpose of an adjudicatory hearing is to determine the guilt or innocence of the defendant or the truth or absence of truth of the allegation of the petition. At the appellant's adjudicatory hearing, the allegations of the petition were read to him and he admitted to all the *Page 301 
charges involved, which was the equivalent of a guilty plea. After this hearing the state filed a Motion to Transfer the appellant to Circuit Court to be treated as an adult.
Additional testimony on this issue was presented on the hearing of the Motion for new trial. Jim Shaw had been retained by the parents of the appellant to represent their son in Family Court. He testified that at the transfer hearing
 "Patricia McCrary and Vickie Triplett and they testified as to the alleged rapes and what had happened to them. They also ___ Mrs. Mims of ABIS (Alabama Boys Industrial School) testified as to what she would recommend as to how he should be treated and she recommended that he be placed in the positive learning center as soon as it reopened."
This testimony was presented although the appellant had already entered a plea of guilty to the charges.
 "Then there was James Dupree, Director of Positive Learning Center, also testified that he would be willing to accept Randy (the appellant) into this facility. The only question that was before Judge Bell when I was representing Randy was whether or not Randy was to be kept within the Juvenile Court process or to be sent to Circuit Court. There was no question of whether or not he was guilty at that point left open."
Following the hearing and argument on the issue of jeopardy, the trial judge overruled the plea and the motion and put the appellant to trial.
In Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779,44 L.Ed.2d 346 (1975), the United States Supreme Court held that to subject a defendant to an adjudicatory proceeding whose object is to determine whether the juvenile has committed acts that violate a criminal law as distinguished from a proceeding limited to the question of transfer, and then, instead of sentencing, transfer him to an adult trial, amounts to double jeopardy. Breed does not preclude separate juvenile and adult proceedings but closely limits the issues which may be considered in the first proceeding. If the juvenile court determines that the juvenile has actually violated a criminal law, adjudges the juvenile delinquent and unfit for treatment as a juvenile and transfers him to the Circuit Court for treatment as an adult offender, jeopardy has attached under the doctrine announced in Breed, and the juvenile would be placed in double jeopardy by trial in the Circuit Court. The juvenile court is only authorized to make a finding of probable cause concerning the specific act leading to the delinquency petition before transferring the juvenile for trial in Circuit Court.Boyd v. State, Ala., 341 So.2d 680 (1977). See also Governmentof Virgin Islands v. Smith, 558 F.2d 691 (3 Cir. 1977). Any adjudicatory finding of delinquency in the juvenile court that the juvenile had violated a criminal statute would cause jeopardy to attach. Breed, supra; Boyd, supra.
Before deciding whether an adjudicatory finding was made in the Family Court, we must first determine whether Breed v.Jones is applicable under the facts of this case. While the appellant's juvenile hearing was held before Breed was decided, his criminal trial occurred after.
On March 14, 1975, the appellant admitted the charge of rape and was adjudged delinquent by the Family Court. On April 4th, that court transferred the appellant to the Criminal Division of the Circuit Court. An indictment was returned against the appellant on May 9, 1975.
On May 27, 1975, the United States Supreme Court decidedBreed v. Jones, supra. The court made no comment with respect to retroactivity. The defense of former jeopardy announced inBreed was rejected by the Circuit Court and the appellant was tried and convicted in November of 1975.
Since May 27, 1975, the date Breed was decided, the highest courts of three states have had occasion to consider whether, and the extent to which, Breed should be given retroactive application.
 "The Supreme Court of California, relying on Robinson v. Neil, 409 U.S. 505, *Page 302 93 S.Ct. 876, 35 L.Ed.2d 29 (1973), held Breed fully retroactive and reversed a conviction where both the juvenile hearing and the adult trial preceded May 27, 1975. In re Bryan, 16 Cal.3d 782, 129 Cal.Rptr. 293, 548 P.2d 693 (1976). In contrast, finding Robinson v. Neil, supra, distinguishable, the Supreme Judicial Court of Massachusetts held Breed prospective only. Stokes v. Commonwealth, Mass., 336 N.E.2d 735 (1975). Further, the Massachusetts Court determined that the crucial event in terms of the application of Breed
was the juvenile hearing rather than the criminal trial (as if an adult), reasoning that official reliance attached at the juvenile level:
 `It was at that moment that the situation became irreversible, for by subjecting the defendant to former jeopardy in the . . . (juvenile court), any subsequent trial would necessarily constitute double jeopardy under the reasoning of Breed.' Commonwealth v. A Juvenile (No. 2), Mass., 351 N.E.2d 521, 525 (1976).
 Thus, under the approach of the Massachusetts Court, Breed does not bar the adult trial after May 27, 1975, of a juvenile subjected to former jeopardy at an omnibus hearing held before May 27, 1975. Commonwealth v. A Juvenile (No. 2), supra." State v. Knowles, Me., 371 A.2d 624, 627 (1977).
The Massachusetts case of A Juvenile (No. 2) was found controlling in Commonwealth v. A Juvenile (No. 1), Mass.,360 N.E.2d 324 (1977).
The United States Court of Appeals for the First Circuit upheld the view of the Massachusetts Court in Jackson v.Justices of Superior Court of Massachusetts, 549 F.2d 215 (1st Cir. 1977), cert. denied, 430 U.S. 975, 97 S.Ct. 1666, 1667,52 L.Ed.2d 370 (1977). The Sixth Circuit Court of Appeals, relying on Robinson v. Neil, supra, but stating that the result would be the same even if the retroactivity criteria of Linkletter v.Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) were utilized, held Breed v. Jones retroactively applicable. Holt v.Black, 550 F.2d 1061 (6th Cir. 1977).
The most recent case found on this issue is State v. Knowles, Me., 371 A.2d 624 (1977). Finding persuasive the reasoning of the Supreme Judicial Court of Massachusetts as upheld by the First Circuit majority in Jackson, the Supreme Judicial Court of Maine followed the holding of Jackson and ruled that Breedv. Jones was not retroactive as applied to the instant conviction.
Jackson, in effect, held that Breed should be applied retroactively only in those cases where the state had obtained some undue advantage or benefit from disclosures made by the defendant at the hearing on the juvenile complaint and this should be determined on a case by case basis.
 "The second purpose of Breed — avoiding the unfairness of making the defendant `tip his hand' before trial — can call for relief from pre-Breed
proceedings, at most, only in cases where handtipping occurred. Whether or not the defendant was prejudiced, and if so, to what extent, depends on precisely what took place in the juvenile court, and whether the prosecution thereby gained, and later used, a tactical advantage in the adult trial. If this benefit to the state can be redressed, or obviated, on an individual basis, there is no need for retroactivity at all.
* * * * * *
 "The balance of these matters may not compel a single answer, but we believe it reasonably permits one. The seriousness of the impact on the state of granting retroactivity is obvious. The most significant aspect of denying it, so far as petitioners are concerned, would be if the state obtained some benefit from disclosures made at the initial hearing. Since this is remediable, general retroactivity would be overkill; the extent, if any, of the state's undue advantage may be determined on an individual, case by case basis." Jackson, at 549 F.2d 219, 220.
Holt v. Black, supra, decided two months after Jackson, did not mention the later case.
In considering the three factor test of Stovall v. Denno,388 U.S. 293, 297, *Page 303 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967), to determine between retroactivity and prospectivity of a new rule, the First Circuit Court of Appeals in Jackson found: (1) That the "ends of public justice" would be unwarrantedly frustrated by barring the juvenile's superior court trial, now that it is too late to prosecute him in a single trial, solely to avoid the pressures and burdens of a second trial where the state did not gain any unfair advantage from the juvenile proceedings; (2) that the fact that the decision in Breed may have been to some extent foreshadowed does not require its retrospective application and (3) that it would be impossible to overestimate the seriousness of affording retroactivity to the Breed rule with regard to its effect on the administration of justice.
We find the court's reasoning in Jackson persuasive and decide that Breed v. Jones is without applicability to require reversal of the instant conviction on grounds of double jeopardy. In so doing we note that the appellant failed to make "a particularized showing of prejudice" that the state had gained "undue advantage" from the initial juvenile hearing. In fact, the state gained no advantage for while the testimony of two prosecution witnesses was presented at the transfer hearing, no defense was offered by the appellant. For the reasons set forth in Jackson, Breed is not applicable to the facts of this case.
 II
The second contention of the appellant is that it was error for the trial court to deny his motion for a continuance due to the absence of a material witness.
Two indictments were returned against the appellant. One involved the rape of Patricia Ann McCrary and the other the rape of Vickie Triplett, the prosecutrix in this case. On the day of trial the state and defense announced ready but it was then discovered that Ms. McCrary was in the hospital. Ms. McCrary had been subpoenaed by the state but the defense did not subpoena her until the day the case was scheduled for trial. Defense counsel represented to the trial court that
 "we did not subpoena her until yesterday but she has been served by the State subpoena. She has a history of not coming to court in these cases. She did not show up at the preliminary and her own case was dismissed and brought to the Grand Jury. She is a material witness. . . .
* * * * * *
 "Had we known the victim of one of the cases in which the state announced ready was not available, we would certainly not have announced (ready)."
The trial judge then declared that it was the rule of the court that when two cases against one defendant are announced ready for trial, the lowest numbered indictment, the indictment returned first, will be the first one tried. Ms. Triplett, the prosecutrix, was the victim in the lowest numbered cause.
The trial judge also found that the "clerk's office subpoena docket" did not show that Ms. McCrary had been subpoenaed by anyone except the State of Alabama, though he assumed an instanter subpoena had been requested by defense counsel.
After the state rested its case and before the testimony for the defense had begun, the court informed defense counsel that he had received a note that Ms. McCrary was in Room 516 at Children's Hospital in fair condition. Counsel replied that he "did get something to that effect".
The record does not reveal that defense counsel informed the trial court of the substance of Ms. McCrary's testimony at any time before the request for a continuance was denied. At the hearing on the motion for new trial the trial judge stated:
 "However, I would bring to the attention of counsel there has never been shown to the court what defense counsel expected Miss McCrary to testify to that would in any way exculpate this defendant."
The action of the trial court in denying the continuance was proper for several *Page 304 
reasons. The refusal to grant a continuance for the absence of a witness is not error (1) in the absence of a showing as to what the witness would testify, Castona v. State, 17 Ala. App. 421,84 So. 871 (1920); White v. State, 86 Ala. 69, 5 So. 674
(1889); Sparks v. State, 46 Ala. App. 357, 242 So.2d 403, cert.denied, 286 Ala. 738, 242 So.2d 408, cert. denied,402 U.S. 909, 91 S.Ct. 1382, 28 L.Ed.2d 650 (1970); (2) in the absence of a showing that the defendant could probably locate and have the witness served within a reasonable time, Myers v. State,19 Ala. App. 98, 95 So. 331 (1923); and (3) where there was no effort to secure the presence of the witness until the day of trial. Reese v. State, 32 Ala. App. 449, 26 So.2d 723 (1946).
Though the state had subpoenaed the absent witness, a defendant desiring a witness cannot rely on the fact that the state has issued process for him. Breckenridge v. Commonwealth,176 Ky. 686, 197 S.W. 395 (1917); Sanders v. State,36 Okla. Cr. 120, 252 P. 855 (1927); State v. Bolyn, 143 S.C. 63,141 S.E. 165 (1928); State v. Jackson, 250 La. 1100, 202 So.2d 264
(1967).
 III
Though the appellant challenges the constitutionality of the "one for one" strike procedure for selecting a jury in Jefferson County, we have consistently upheld the constitutionality of Section 714, Vol. 14, Appendix, Code of Alabama 1940, Recompiled 1958. See Liptroth v. State, Ala.Cr.App., 335 So.2d 683, cert. denied, Ala., 335 So.2d 688
(1976) and cases cited therein at 335 So.2d 685; White v.State, Ala.Cr.App., 347 So.2d 566 (1977).
 IV
The appellant maintains that the evidence was insufficient to support a conviction because there was no proof of penetration and no proof of force or threat.
The prosecutrix testified in response to questioning by the prosecution that the appellant placed his private parts into her private parts. This was sufficient to show penetration.Thomas v. State, 53 Ala. App. 232, 298 So.2d 652, cert. denied,292 Ala. 755, 298 So.2d 657 (1974); Beckley v. State, Ala.Cr.App., 353 So.2d 542 (1977).
The prosecutrix's testimony as to the degree and nature of her resistance was sufficient to present a question of fact for the jury. The testimony of the prosecutrix need not be corroborated in order to sustain a conviction. Boddie v. State,52 Ala. 395 (1875); Daniels v. State, Ala.Cr.App.,343 So.2d 566 (1977).
 V
Finally the appellant maintains that the trial court erred in charging the jury on the law of conspiracy in that the charge was misleading and unsupported by the evidence.
Joint participants in a crime may be denominated "conspirators" and a joint act or scheme may be called a "conspiracy" since these words do not lose all of their ordinary meaning and content merely because there exists a separate crime of conspiracy. United States v. Snyder, 5th Cir., 505 F.2d 595, cert. denied, 420 U.S. 993, 95 S.Ct. 1433,43 L.Ed.2d 676 (1974).
The evidence demanded an instruction on conspiracy. The prosecutrix testified that the appellant and Charles Thomas got her out of the car and dragged her down the road back into the woods; that "they" started taking off her clothes and pushing her on the ground; that Thomas was taking off her clothes while the appellant was hitting, beating and choking her and that the appellant held her down while Thomas raped her; then Thomas held her down while the appellant "did the same thing". Then "they" told her "they" were going to take her back.
While a conspiracy involves a community of purpose, it may be formed in a flash or an instant without prearrangement. Ray v.State, 32 Ala. App. 556, 28 So.2d 116 (1947); Smith v. State,57 Ala. App. 151, 326 So.2d 680, cert. denied, *Page 305 295 Ala. 419, 326 So.2d 686 (1975); Howell v. State, Ala.Cr.App.,339 So.2d 138 (1976). The conspiratorial agreement may arise on the spur of the moment. Mabry v. State, 40 Ala. App. 129,110 So.2d 250 (1959); Cotton v. State, 36 Ala. App. 418,57 So.2d 125 (1952). Thus, under the evidence, a jury instruction on conspiracy was proper.
Additionally we find that the charge given was not indefinite, uncertain or misleading.
 "Hypercriticism should not be indulged in in construing charges of the court (S. N.R.R. Co. v. Jones, 56 Ala. 507; McGuire v. State, 2 Ala. App. 218, 223, 57 So. 57); nor fanciful theories based on the vagaries of the imagination advanced in the construction of the court's charge, which is usually — as it is here, and as it should be — expressed in plain language that is susceptible of the ordinary understanding." Addington v. State, 16 Ala. App. 10, 19, 74 So. 846, 855 (1916).
The appellant has been well represented by court appointed counsel on appeal. In light of this and our statutory duty we have carefully searched the record for error. Finding none, we are of the opinion that the judgment of the lower court is due to be affirmed.
AFFIRMED.
All Judges concur.