JONES, Justice
(dissenting):
This case is before the Court upon writ of certiorari to review the conviction of Johnny Ray Parker, a juvenile, of second decree murder. I would reverse and remand.
On March 3, 1976, the body of Christine Lott was found at the L. & H. Salvage Yard, where she worked, in Morgan County. Early the next morning, Parker, a fifteen-year old, was questioned by Decatur police at his home. Though Parker was orally advised of his rights prior to the questioning, his mother was neither advised of his rights nor advised that he was a suspect in the murder case. Moreover, Mrs. Parker was not allowed to be present during the questioning and her testimony is to the effect that she was told by the police that she could not go to the police station with Parker.
Upon arrival at the police station, Parker was advised of his rights again. Thereafter, Parker read a “rights form” and signed a printed waiver of his rights. After being questioned by three detectives for forty-five minutes, Parker confessed to the murder and signed a written confession statement.
During this time, the police filed a petition with the Juvenile Division of the Circuit Court of Morgan County. The Juvenile Court determined that Parker should be detained. On March 10, the State filed a motion requesting that the case be transferred to Circuit Court and that Parker be tried as an adult. Upon motion by defense counsel, Parker’s mental condition was evaluated.
The Juvenile Court transferred the case to the Adult Division on May 3, 1976. At trial, the jury found Parker guilty of murder in the second degree, and his sentence was set at fifty years.
The Court of Criminal Appeals reversed the judgment of the trial Court. Upon rehearing, however, that opinion was set aside and withdrawn, and the judgment of the trial Court was affirmed.
Parker contends that his confession was inadmissible at his trial because, he asserts, the new Juvenile Code (No. 1205, S. 400, §§ 5-101, et seq., 1975 Ala. Acts) was in effect at that time and prevented its inclusion. It is true that if the Act was in effect at the time of his trial, § 5-125 prevents admissibility of the youth’s confession. This section provides in pertinent part:
“Unless advised by counsel, the statements of a child . . . made while in custody . . . shall not be used . in a criminal proceeding prior to conviction.”
The Act states in § 18-103 that it is to “become effective immediately upon its passage and approval by the governor, except to the extent otherwise provided herein . . .” The Act was approved on October 10, 1975.
Thus, on its face it would appear the section became effective on October 10. This, however, does not satisfy our investigation of the matter. Certainly, this Court does not have the power to pass legislation. Art. 18, § 282, Const. of Ala. 1901. It does have the authority, however, to interpret legislation passed by the Legislature. State v. Union Tank Car Co., 281 Ala. 246, 201 *939 So.2d 402 (1967); and Richardson v. Morrow, 276 Ala. 385, 162 So.2d 480 (1964). It is under this authority that I would resolve that the effective date of Art. 5, Act 1205, was January 16,1977.[1] Without a full recitation of the reasons behind this interpretation, suffice it to say that the Legislature surely intended this latter date because only then would the District Courts, an integral element of both the juvenile code[2] and of the unified court system, be in existence. The Legislature certainly had this in mind and this Article falls within the “otherwise provided” clause. See Huggins v. Huggins, 331 So.2d 704 (Ala.Civ.App.1976).
For this reason, Act 1205 is not applicable and this case falls under prior law, as contained in Tit. 13, §§ 350, et seq., Code. Section 377 provides:
“The voluntary admissions or confessions of any . . . delinquent child, as described herein . . . made to the probation officer, or any other person, in reference to any cause or matter in such court, if otherwise competent, shall be received in such court as legal evidence.”
Therefore, had our interpretation of the “voluntary admissions” section of the applicable code been the sole issue raised, the confession’s admissibility would be evident. This is not the case before us, however.
Parker’s second contention is more viable in that he contends that a specific finding of delinquency is required by the Juvenile Court before a youth may be transferred to the adult division pursuant to Tit. 13, § 364, Code. In support of his contention, Parker cites Seagroves v. State, 279 Ala. 621, 189 So.2d 137 (1966). In that case, it was held that two questions are presented in the determination whether a child should be transferred to the adult division.
“First, the court must decide whether the child is a delinquent child. If the state fails to prove by competent evidence that defendant is delinquent, then the case would appear to be at an end.
“Second, the court must decide, after thorough investigation or exercise of its disciplinary measures, whether the child can, be made to lead a correct life and be properly disciplined under the provisions of Chapter 7, Title 13. . . .” 279 Ala., at 623, 189 So.2d at 139.
In other words, the Juvenile Court must determine that the child was delinquent, and, then, that he was incorrigible. See Rudolph v. State, 286 Ala. 189, 238 So.2d 542 (1970).
The case of Steele v. State, 289 Ala. 186, 266 So.2d 746 (1972), refines these requirements as follows:
“[T]he finding of the trial court that the appellant-defendant was incorrigible necessarily included a finding of delinquency. Had the court determined the absence of delinquency, there would have been no need to pass on the issue of incorrigibility. The latter issue, unfavorable to the minor, presupposes that the minor was a delinquent. There was no necessity for a specific finding to that effect.” 289 Ala., at 189, 266 So.2d at 749.
The viability of these decisions was seriously impaired, however, by a recent decision of the United States Supreme Court. In Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), the Court held that an adjudicatory determination of delinquency placed the juvenile in jeopardy. Further proceedings in the adult forum would place the juvenile twice in jeopardy, thus violating the Fifth Amendment of the *940 Federal Constitution.[3] See also Art. 1, § 9, Const. of Ala. 1901.
In compliance with Breed, this Court has reinterpreted Tit. 13, § 364, Code, to require a finding of probable cause concerning the specific act leading to the delinquency petition, rather than an adjudication of delinquency. Moreover, the statute requires a finding of incorrigibility. Boyd v. State, 341 So.2d 680 (Ala.1976). This procedure was specifically authorized by Breed.
“We note that nothing decided today forecloses States from requiring, as a prerequisite to the transfer of a juvenile, substantial evidence that he committed the offense charged, so long as the showing required is not made in an adjudicatory proceeding.” 421 U.S. at 538, 95 S.Ct. at 1790, n. 18.
Thus, a two-step determination is still required under Tit. 13, § 363, Code. The first step, however, is a finding of probable cause rather than an adjudication of delinquency. As shown, to hold otherwise would render the statute unconstitutional.
This Court, in Steele, held that a finding of incorrigibility necessarily included a finding of delinquency. Without speaking to the validity of that statement, or to the propriety of the opinion itself, clearly a finding of incorrigibility does not necessarily include a finding of probable cause. The Juvenile Court is to determine, from the evidence presented, whether there is probable cause that the accused youth committed the act as alleged in the petition. Thereafter, assuming the first determination has been made, the Court “after thorough investigation or exercise of its disciplinary measures” must determine that the accused “cannot be made to lead a correct life and cannot be properly disciplined” by the juvenile authorities. While a determination of incorrigibility may not be reached before the probable cause issue is resolved, the two are not synonymous and one does not flow naturally from the other. Therefore, two specific, distinct and separate determinations must be made before a youth may be transferred under Tit. 13, § 364, Code.
In the case before us, there is no indication that the Juvenile Court ever reached the probable cause issue. Its order, transferring jurisdiction over Parker to the Circuit Court, alludes only to certain inadequacies of the juvenile justice system as regards the petitioner. The Court noted that Parker, in a prior and unrelated case, had been adjudged delinquent. This, however, goes only to the incorrigibility issue because the delinquency mentioned in the statute refers to the present acts for which the petition was sought. Any prior acts would be irrelevant as to the probable cause issue. Without a determination of probable cause, the trial Court was without jurisdiction to consider the incorrigibility issue, and thus without any basis to invoke the jurisdiction of the circuit court.
By quashing the writ, the majority implicitly holds that, in order to effect transfer, there is no requirement for even a prima facie or probable cause showing that the minor committed the offense charged in the motion for transfer; i. e., the mere allegation of the commission of a felony, along with a showing of incorrigibility, according to the majority, is sufficient. This is our point of difference.
It should be noted that the transfer provision of the new juvenile code, § 12-15-34, Code of Alabama (1975), concludes with this admonition:
When a person is transferred for criminal prosecution, the court shall set forth in writing its reasons for granting the motion which shall include a finding of probable cause for believing that the allegations are true and correct.
SHORES, J., concurs.

. This resolution, dated December 1, 1975, provides in part:
“Whereas, the Supreme Court of Alabama, in reviewing Act No. 1205, Acts of Alabama 1975, approved October 10, 1975, concludes that Article 5 shall become effective January 16, 1977, statutory provisions currently effective remaining in full force and effect until that time .

. The District Court is essential to the Article in that it has original jurisdiction over juvenile cases. No. 1205, S. 400, § 5-102, 1975 Ala. Acts. Because it does not come into existence until January 16, 1977 (No. 1205, S. 400, § 4-101(a), 1975 Ala. Acts), the Legislature intended the law to remain unchanged until that time.

. No ruling of the trial Court was invoked as to the constitutionality of this statute; therefore, its constitutionality, vel non, is not before us. Opinion of the Justices, 281 Ala. 50, 198 So.2d 778 (1967); Opinion of the Justices, 267 Ala. 110, 100 So.2d 565 (1958); and Wages v. State, 225 Ala. 2, 141 So. 707 (1932).