Gena M. Duncan, the appellant, was convicted of endangering the welfare of a child, a misdemeanor, in violation of Ala. Code 1975, § 13A-13-6(a)(2). She was sentenced to one year at hard labor in the county jail. All but 30 days of the sentence was suspended, and the appellant was ordered to serve 15 weekends in jail. On this appeal from her conviction, the appellant raises three issues.
The undisputed evidence established that Travis Eugene Holden, the appellant's live-in boyfriend, babysat for Kassie Larene Duncan, the appellant's two-year-old daughter, while the appellant was at work each day. On February 18, 1992, the child was critically injured while in Holden's custody. She suffered a fractured skull accompanied by seizures and swelling of the brain, and was close to death before she was eventually stabilized by emergency medical personnel.
Holden pleaded guilty to the offense of first degree assault. The only disputed issue at trial was whether the appellant knew or should have known that she had endangered her daughter by leaving the child with Holden.
 I
The appellant claims that the trial court erred by denying her motion in limine to exclude testimony about and photographs of her daughter's injuries at the time the child was admitted to the emergency room on February 18, 1992. Eight witnesses for the State testified about the child's injuries. Thirteen photographs depicting those injuries were admitted in evidence.
At trial the appellant argued that because she was not charged with the actual assault *Page 1086 
of her daughter and because she was willing to stipulate to the severity of the injuries received in that assault, the foregoing evidence was not relevant to any disputed issue, was more prejudicial than probative, and should have been excluded.
We disagree. Evidence describing the injuries of the appellant's daughter was clearly relevant. "It does not lie in the power of one party to prevent the introduction of relevant evidence by admitting in general terms the fact which such evidence tends to prove. . . . Parties, as a general rule, are entitled to prove the essential facts, — to present to the jury a picture of the events relied upon. To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight." 9 J. Wigmore, Evidence § 2591 at 826 n. 2 (Chadbourn rev. 1981) (quoting Dunning v. Maine Central R.R., 91 Me. 87, 39 A. 352,356 (1897)). "[A] colorless admission by the opponent may sometimes have the effect of depriving the party of the legitimate moral force of his evidence." 9 J. Wigmore at 824 (emphasis in original).
In Alabama, a party is not required to accept his adversary's stipulation, but may insist on proving the fact.
 "A party's statement on the trial, that he admits the existence of a specified fact which is beneficial to the adverse party, creates a discretion in the trial court, to be exercised within the bounds of reason, to refuse to allow the adverse party to introduce evidence to prove the fact. As a matter of wisdom in the exercise of the discretion, however, the trial court should generally allow the adverse party to introduce evidence to prove the fact unless it is palpable that the admission is as fully persuasive of the existence of the fact as would be the adverse party's offered evidence of the fact."
C. Gamble, McElroy's Alabama Evidence, § 472.01(5) (4th ed. 1991) (footnotes omitted). See United States v. Davis,792 F.2d 1299, 1305 (5th Cir), cert. denied, 479 U.S. 964,107 S.Ct. 464, 93 L.Ed.2d 409 (1986) ("[w]e will not adopt an inflexible rule that allows a party by stipulation to prevent his adversary's case from being presented in its appropriately full and real life context").
Notwithstanding the appellant's willingness to stipulate to the severity of her daughter's injuries, testimony on that point was relevant and admissible. Therefore, the photographs depicting those injuries were admissible. " 'A photograph "is competent evidence of anything of which it is competent and relevant for a witness to give a verbal description." 'Harrell v. State, 470 So.2d 1303, 1306 (Ala.Cr.App. 1984), affirmed, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935,106 S.Ct. 269, 88 L.Ed.2d 276 (1985)." Wilson v. State,584 So.2d 921, 923 (Ala.Cr.App. 1991). "Photographs that tend to shed light on, to strengthen, or to illustrate other testimony presented may be admitted into evidence." Ex parte Siebert,555 So.2d 780, 783 (Ala. 1989), cert. denied, 497 U.S. 1032,110 S.Ct. 3297, 111 L.Ed.2d 806 (1990).
The live testimony and photographs were also admissible because they tended to shed light on whether the appellant knew or should have known of her boyfriend's prior mistreatment of the child. The evidence indicated that, in addition to the most recent injuries, the child had "old bruises," R. 140, indicating "a pattern" of "prior injuries" that were "clearly visible," R. 141.
This Court addressed a nearly identical issue in Phelps v.State, 439 So.2d 727 (Ala.Cr.App. 1983). In that case, a mother was prosecuted for child abuse, based on the mother's duty to protect her son after being put on notice of the stepfather's ill treatment of the child. On appeal, the defendant mother argued "that the pictures of her dead child were irrelevant because she was not charged with either murder or the actual beating of her son." Phelps v. State, 439 So.2d at 736. This court held:
 "[E]vidence is relevant if it has any probative value, however slight, upon a matter at issue in the case. C. Gamble, McElroy's Alabama Evidence § 21.01 (3d ed. 1977). The matter at issue here was whether the appellant failed to remove the child from the destructive influence of her husband after having knowledge of his abuse of the child. The photographs showing the nature and location of bruises and *Page 1087 
other injuries on the child's body, tended to shed light on the issue of appellant's knowledge that her son was being abused, and therefore were relevant."
Id. See also Ellis v. State, 570 So.2d 744 (Ala.Cr.App. 1990). In Ellis, we upheld the admission of photographs of a dead child over the mother's argument that "because neither the identity of the victim nor the cause of her death was at issue under the defendant's plea of insanity, the photographic evidence was introduced solely to inflame the jury."570 So.2d at 759. This court repeated the familiar rule that
 "[p]hotographs which depict the character and location of external wounds on the body of a . . . victim are admissible even though they are cumulative evidence based upon an undisputed matter."
Id. (emphasis added). See Ex parte Bankhead, 585 So.2d 112, 118
(Ala. 1991) ("photographs depicting the character and location of wounds on a deceased's body are admissible even though they are cumulative and are based on undisputed matters"); Ex parteSiebert, 555 So.2d at 783 (same).
 II
The appellant maintains that the indictment failed to charge an offense because it did not sufficiently inform her of what she was called upon to defend. The indictment in this case charged that the appellant,
 "a parent, guardian or other person legally charged with the care or custody of Kassie Larene Duncan, a child less than eighteen (18) years of age, did fail to exercise reasonable diligence in the control of Kassie Larene Duncan so as to prevent Kassie Larene Duncan from becoming a dependent, as defined [in] Section 12-15-1 of the Code of Alabama, by such conduct more particularly described as knowingly leaving said child in an abusive environment . . . in violation of Section 13A-13-6 of the Code of Alabama." CR. 1-2.
Section 13A-13-6 provides, in pertinent part:
 "(a) [A] man or woman commits the crime of endangering the welfare of a child when:
". . . .
 "(2) [H]e or she, as a parent . . . of a child less than 18 years of age, fails to exercise reasonable diligence in the control of such child to prevent him or her from becoming a 'dependent child' . . . as defined in section 12-15-1."
Section 12-15-1(10) provides that a "dependent child" is one
 "a. Who, for any reason, is destitute, homeless or dependent on the public for support; or
 "b. Who is without a parent or guardian able to provide for his support, training or education; or
 "c. Whose custody is the subject of controversy; or
 "d. Whose home, by reason of neglect, cruelty or depravity on the part of his parent, parents, guardian or other person in whose care he may be, is an unfit and improper place for him; or
 "e. Whose parent, parents, guardian or other custodian neglects or refuses, when able to do so or when such service is offered without charge, to provide or allow medical, surgical or other care necessary for such child's health or well-being; or
 "f. Who is in such condition or surroundings or is under such improper or insufficient guardianship or control as to endanger his morals, health or general welfare; or
 "g. Who has no proper parental care or guardianship; or
 "h. Whose parent, parents, guardian or custodian fails, refuse[s] or neglect[s] to send such child to school in accordance with the terms of the compulsory school attendance laws of this state; or
 "i. Who has been abandoned by his parents, guardian or other custodian; or
 "j. Who is physically, mentally or emotionally abused by his parents, guardian or other custodian or who is without proper parental care and control necessary for his well-being because of the faults or habits of his parents, guardian or other custodian or their neglect or refusal, when able to do so, to provide them; or *Page 1088 
 "k. Whose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child; or
 "l. Who has been placed for care or adoption in violation of the law; or
 "m. Who for any other cause is in need of the care and protection of the state; and
 "n. In any of the foregoing, is in need of care or supervision."
The appellant claims that the indictment was defective because the allegation that she failed to prevent her child from becoming a dependent, "by such conduct more particularlydescribed as knowingly leaving said child in an abusiveenvironment" did not specifically track any of the fourteen alternatives found in subsections (a) through (n) of § 12-15-1(10), defining a "dependent child."
The appellant is correct that the phrase "knowingly leaving said child in an abusive environment" is not in verbatim correspondence with any one of the fourteen alternatives of § 12-15-1(10). Instead, the phrase appears to fit several of the statutory subsections, especially parts (d), (f), and (j).
The indictment, however, need not have specified which of the § 12-15-1 subsections was applicable in order to have charged an offense. Generally, it is "sufficient to charge the elements of the statutory offense in the words of the statute [here, §13A-13-6], provided the statute prescribe[s] with definiteness the constituent elements of the offense." Ex parte Harper,594 So.2d 1181, 1183 (Ala. 1991). The allegation that the appellant "fail[ed] to exercise reasonable diligence in the control of Kassie Larene Duncan so as to prevent Kassie Larene Duncan from becoming a dependent, as defined [in] Section 12-15-1 of the Code of Alabama," tracked the language of § 13A-13-6, and was itself legally sufficient.
The fact that the indictment did not specify which of the § 12-15-1 alternatives was applicable did not render it fatally defective. An indictment that tracks the language of a statute that incorporates a word or phrase "defined by law" in another statute need not further clarify the incorporated word or phrase. See Inmon v. State, 585 So.2d 261, 263
(Ala.Cr.App. 1991). This indictment stated an offense without
alleging which of the § 12-15-1 subsections was applicable, and the appellant's motion to dismiss the indictment was correctly denied.
While the appellant would have been, on timely motion, entitled to a more definite statement of the charge against her, she made no such motion "prior to the entry of her plea." See Rule 13.2(e), A.R.Crim.P. Compare Ex parte Harper,594 So.2d at 1183 n. 2 (wherein the Alabama Supreme Court observed that "Rule 13.2(e), A.R.Crim.P., provided th[e] defendant, had he requested it before joining issue on the indictment, the right to move for a more definite statement of the charge. Had such a procedure been available in Gayden [v. State, 262 Ala. 468, 80 So.2d 501 (1955), ("a leading case on the sufficiency of an indictment")], it appears that the result reached there would have been different").
The appellant in fact received a more definite statement of the charge when the trial court instructed the jury that it should measure the appellant's conduct against the definition of "dependent child" contained in Ala. Code 1975, § 12-15-1(10)(f): a child "[w]ho is in such condition or surroundings or is under such improper or insufficient guardianship or control as to endanger his morals, health or general welfare." R. 428. The appellant entered no objection to this portion of the court's charge. Because subsection (f) conforms to the evidence in this case, and because there is absolutely no indication that the appellant was misled in making her defense to the indictment charging that she "knowingly le[ft her] child in an abusive environment," we find that, even if any error had been preserved, it would have been harmless.
 III
The State's evidence was legally sufficient to be submitted to the jury. The prosecution established that the appellant's daughter had suffered several injuries, some of *Page 1089 
which required emergency room treatment, since the time the appellant began living with Travis Eugene Holden. The State's witnesses testified that the appellant's daughter had, for some months prior to the instant offense, clearly visible contusions and lacerations which were inconsistent with normal childhood injuries. The prosecution presented evidence that the appellant was defensive and belligerent when questioned about the cause of her daughter's injuries by social workers or medical personnel.
The appellant elicited testimony, via defense witnesses and cross-examination of the State's witnesses, that conflicted with the prosecution's case. Suffice it to say, the issue of whether the appellant knew or should have known that she was endangering her daughter by leaving the child in the custody of Travis Eugene Holden was in dispute and was for the jury to resolve.
 "We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial. E.g., Franklin v. State, 405 So.2d 963, 964 (Ala.Cr.App.), cert. denied, 405 So.2d 966 (Ala. 1981); Crumpton v. State, 402 So.2d 1081, 1085 (Ala.Cr.App.), cert. denied, 402 So.2d 1088 (Ala. 1981); Nobis v. State, 401 So.2d 191, 198 (Ala.Cr.App.), cert. denied, 401 So.2d 204
(Ala. 1981). ' "[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine." ' Harris v. State, 513 So.2d 79, 81 (Ala.Cr.App. 1987) (quoting Byrd v. State, 24 Ala. App. 451, 136 So. 431
(1931)). In this case the conflicting evidence offered by the state and by [the appellant] simply presented a jury question, Gunn v. State, 387 So.2d 280, 282 (Ala.Cr.App.), cert. denied, 387 So.2d 283
(Ala. 1980), and the verdicts rendered thereon are conclusive on appeal, Roberson v. State, 162 Ala. 30, 32, 50 So. 345, 346 (1909); Bragg v. State, 518 So.2d 847, 849 (Ala.Cr.App. 1987)."
Johnson v. State, 555 So.2d 818, 820 (Ala.Cr.App. 1989).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.