The appellant, Charles Woodson, was convicted of attempted murder, a violation of §§ 13A-4-2 and 13A-6-2(a)(1), Ala. Code 1975, and discharging a firearm into an occupied vehicle, a violation of § 13A-11-61(a), *Page 1228 
Ala. Code 1975. The trial court sentenced him, as a habitual offender, to imprisonment for life without the possibility of parole on the attempted murder conviction and to serve 20 years in prison on the discharging a firearm into an occupied vehicle conviction. The appellant filed a motion for a new trial, which the trial court denied after conducting a hearing. This appeal followed.
 I.
The appellant argues that the trial court should have granted a continuance so sheriff's deputies could serve a subpoena on Rico Teague, who he alleges committed the offense. Although the appellant never specifically asked for a continuance, the parties and the trial court discussed the situation regarding Teague at length, and the trial court treated those discussions as a motion for a continuance to secure Teague's presence.
 "It is well settled that a motion for a continuance is addressed to the sound discretion of the trial court and that, absent a showing of abuse of that discretion, the trial court's decision on the matter will not be overturned on appeal. Arnold v. State, 601 So.2d 145 (Ala.Cr.App. 1992); see generally cases cited at 14 Ala. Digest 2d § 586.
 "To warrant a continuance on the ground that a witness is absent, it must be shown that the expected testimony of the witness is material and competent, that there is a probability that the evidence will be forthcoming if the case is continued, and that the moving party exercised due diligence to secure the evidence. Ex parte Saranthus, 501 So.2d 1256 (Ala. 1986). Material evidence means '[e]vidence which has an effective influence or bearing on questions in issue.' Black's Law Dictionary 976 (6th ed. 1990). 'Simply put, a "material" fact is one that would matter in the trial on the merits.' Sumner v. Sumner, 664 So.2d 718, 723
(La.App. 1995). It must be shown that substantially favorable testimony would be given by the witness and that the denial of a continuance would materially prejudice the defendant. Whitehead v. State, 429 So.2d 641 (Ala.Cr.App. 1982). In addition, it must be established that the expected testimony is not merely cumulative or in the nature of impeachment, and the motion for a continuance must not be made merely for purposes of delay. Mitchell v. Moore, 406 So.2d 347 (Ala. 1981); Malone v. State, 659 So.2d 1006 (Ala.Cr.App. 1995); McClellan v. State, 628 So.2d 1026 (Ala.Cr.App. 1993); Prince v. State, 623 So.2d 355 (Ala.Cr.App. 1992).
 "The appellant made no showing as to what the witness's testimony would be if he were present and testified. The refusal to grant a continuance because a witness will be absent is not error if there is no showing of what the witness would testify to. Smith v. State, 368 So.2d 298
(Ala.Cr.App. 1978), writ quashed, 368 So.2d 305 (Ala. 1979); Castona v. State, 17 Ala. App. 421, 84 So. 871 (1920). Thus, the appellant failed to establish that the expected testimony would be material and competent, that it would be substantially favorable to him, that it would not be merely cumulative or in the nature of impeachment, or that the denial of the continuance would be prejudicial to him."
Smith v. State, 698 So.2d 189, 205 (Ala.Crim.App. 1996), aff'd,698 So.2d 219 (Ala.), cert. denied, 522 U.S. 957, 118 S.Ct. 385,139 L.Ed.2d 300 (1997) (emphasis added). During the discussions regarding Teague, the following occurred:
 "[PROSECUTOR]: Your Honor, our sheriff, Sheriff West, tells me that he *Page 1229 
had copies made of the subpoena and every deputy he had on the weekend were trying to locate [Teague]. They say he is back and forth in Montgomery. He doesn't stay in Crenshaw County very often. He has two prior felonies. [Defense counsel] indicated to me that he was going to use him to show that he did the shooting and I don't believe there is any way in the world that man is going to come down here and testify that he did the shooting.
"THE COURT: Well, have you talked to . . . Mr. Teague?
". . . .
"[DEFENSE COUNSEL]: No.
 "THE COURT: Well, you don't know what he's going to testify to.
 "[DEFENSE COUNSEL]: The evidence leans towards — I'm going to present witnesses that Mr. Teague did the shooting.
"THE COURT: You're going to call him to the stand?
"[DEFENSE COUNSEL]: Yes, sir.
"THE COURT: To let him admit that he did the shooting?
 "[DEFENSE COUNSEL]: I'm going to call him to the stand and ask him.
 "THE COURT: You have not been able to locate him to talk to him yourself?
 "[DEFENSE COUNSEL]: I have not talked to him because he's got a bad reputation and I don't want to get involved with him.
 "THE COURT: Don't you think that if you're going to talk to him and subpoena him — I mean subpoena him to testify in your client's trial that he should be advised you could talk to him and try to talk to him ahead of time?
 "[DEFENSE COUNSEL]: My client has talked to him. My client sent him several messages from the jail and has even talked to him. I talked to Mr. Teague one time on the telephone."
(R. 56-57.) The appellant indicated only what he would ask Teague, not what he expected Teague's response to be or that the response would be substantially favorable to him. Furthermore, at trial, he elicited testimony from two other witnesses that Teague committed the offense. Thus, even if Teague had testified that he shot at the victim, such testimony would have been cumulative to the testimony of those other witnesses. Finally, during the discussions regarding Teague, a deputy sheriff, the prosecutor, and defense counsel described the difficulties the sheriff's department had encountered in attempting to serve the subpoena on Teague. When the trial court asked defense counsel what made him think Teague would be available or would show up if the sheriff's department found him, defense counsel responded, "The likelihood of him being in jail next time will be pretty good." (R. 59.) However, defense counsel admitted that he could not assure the court that Teague would appear if the cases were continued. In addition, Deputy Jerry Pritchett testified at trial that Teague had previously refused to make a statement to law enforcement officers. Therefore, the appellant did not show that there was a reasonable probability that Teague's testimony would be forthcoming if the cases were continued. For these reasons, the trial court did not err when it did not order a continuance.
 II.
The appellant also argues that the trial court erroneously denied his motion for a new trial based on alleged juror misconduct. Specifically, he contends that "[j]urors' failure to disclose their knowledge of [him] and his family and of the person [he] contended actually committed *Page 1230 
the charged crimes deprived [him] of his right to an impartial jury." (Appellant's brief at p. 5.) "'[A]t a hearing on a motion for a new trial, the defendant has the burden of proving the allegations of his motion to the satisfaction of the trial court.'" Dawson v. State,710 So.2d 472, 475 (Ala. 1997) (citations omitted). Furthermore, "'[t]he ruling of the trial judge denying a motion for new trial will not be disturbed in the absence of a showing of abuse of discretion, and this Court will indulge every presumption in favor of the correctness of his ruling.'" Reynolds v. City of Birmingham,723 So.2d 822, 824 (Ala.Crim.App. 1998) (quoting Hall v. State,348 So.2d 870, 875 (Ala.Crim.App. 1977), cert. denied,348 So.2d 875 (Ala. 1977), cert. denied, 434 U.S. 1021, 98 S.Ct. 745,54 L.Ed.2d 768 (1978)).
First, the appellant argues that jurors S.M. and M.L. committed misconduct when they did not respond during voir dire examination to the questions asking whether any members of the venire knew him. However, he did not allege in his motion for a new trial or during the hearing on the motion that S.M. or M.L. knew him. Accordingly, this argument is not properly before this court. See Marshall v. State, 629 So.2d 766 (Ala.Crim.App. 1993) (holding that the statement of specific grounds in a motion for a new trial waives all other grounds not specified).
Second, the appellant argues that jurors S.M. and M.L. committed misconduct when they did not disclose that they knew his family. The record does not reflect that the parties or the trial court asked the veniremembers whether they knew the appellant's family. "Veniremen cannot be expected to reveal information not elicited by the litigants." Davis v. State, 51 Ala. App. 200,202, 283 So.2d 650 (Ala.Crim.App. 1973). See also Marshall v.State, 668 So.2d 891 (Ala.Crim.App. 1995). Therefore, because neither party specifically asked S.M. and M.L. whether they knew the appellant's family, they did not have an obligation to volunteer that information. Accordingly, the appellant's argument is without merit.
Finally, the appellant argues that he was denied the right to a fair trial because juror M.L. did not indicate that her niece by marriage was allegedly living with Rico Teague, who he alleges actually committed the offense. However, in his motion for a new trial, he alleged that he was denied the right to a fair and impartial jury because juror M.L. did not disclose that she was Rico Teague's aunt by marriage and that "[a]t times relevant to this case, Rico Teague was staying with [her]." (C.R. 48.) Because the appellant did not present to the trial court the specific allegations he raises on appeal, he did not properly preserve this argument for our review. See Marshall v. State,629 So.2d 766 (Ala.Crim.App. 1993).
For the above-stated reasons, we affirm the appellant's convictions. However, we must remand this case for resentencing on the discharging a firearm into an occupied vehicle conviction. Discharging a firearm into an occupied vehicle is a Class B felony. See § 13A-11-61(b), Ala. Code 1975. During the sentencing hearing, the trial court found that the appellant had three prior felony convictions. The Habitual Felony Offender Act, § 13A-5-9, Ala. Code 1975, provides, in pertinent part:
 "(c) In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such convictions has committed another felony, he must be punished as follows:
". . .
 "(2) On conviction of a Class B felony, he must be punished for life in the penitentiary." *Page 1231 
Accordingly, the appellant's twenty-year sentence falls below the mandatory sentence set forth in § 13A-5-9(c)(2), Ala. Code 1975. Therefore, we remand this case for the trial court to sentence the appellant in accordance with § 13A-5-9(c)(2), Ala. Code 1975. The trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 28 days after the release of this opinion. The return to remand shall include a transcript of the remand proceedings conducted by the trial court.
AFFIRMED AS TO CONVICTION FOR ATTEMPTED MURDER AND DISCHARGING A FIREARM INTO AN OCCUPIED VEHICLE AND AS TO SENTENCE FOR THE ATTEMPTED MURDER CONVICTION; REMANDED WITH DIRECTIONS FOR RESENTENCING ON THE CONVICTION FOR DISCHARGING A FIREARM INTO AN OCCUPIED VEHICLE.*
Long, P.J., and McMillan, Cobb, and Fry, JJ., concur.
* Note from the reporter of decisions: On October 20, 2000, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On November 9, 2000, that court denied rehearing, without opinion. On March 30, 2001, the Supreme Court quashed the writ of certiorari as having been improvidently granted (1000377).