879 So.2d 594 (2003)
Brian Heath HARRISON
v.
STATE of Alabama.
CR-01-2335.
Court of Criminal Appeals of Alabama.
April 25, 2003.
Rehearing Denied June 13, 2003.
Certiorari Denied October 10, 2003.
*596 Dewayne M. Beesley, Monroeville, for appellant.
William H. Pryor, Jr., atty. gen., and John M. Porter, asst. atty. gen., for appellee.
Alabama Supreme Court 1021682.
BASCHAB, Judge.
The appellant, Brian Heath Harrison, was convicted of discharging a firearm into an unoccupied vehicle, a violation of § 13A-11-61(a), Ala.Code 1975. The trial court sentenced him, as a habitual offender, to serve a term of twenty-five years in prison. See § 13A-5-9(b)(1), Ala.Code 1975. The appellant filed a "Motion for Judgment of Acquittal or in the Alternative, Motion for New Trial or Arrest of Judgment," and the trial court conducted a hearing on the motion. However, the motion was subsequently denied by operation of law. See Rule 24.4, Ala. R.Crim. P. This appeal followed.

I.
The appellant argues that the trial court erroneously sentenced him as a habitual offender. Citing this court's holding in Poole v. State, 846 So.2d 370 (Ala.Crim. App.2001), he contends that the State was required to give him notice of its intent to *597 enhance his sentence pursuant to the Habitual Felony Offender Act at a reasonable time before his trial began. In Poole, we held that,
"[b]ecause Apprendi [v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)] mandates that any fact that increases the sentence be submitted to a jury, we believe that notice of intent to seek a sentencing enhancement should be given at a reasonable time before the start of the trial."
Poole v. State, 846 So.2d 370, 388 (Ala. Crim.App.2001). However, we further noted that
"[t]he Apprendi Court specifically excluded from its holding proof of prior convictions necessary to invoke a habitual felony offender act. 530 U.S. at 490. See State v. Sanko, 62 Conn.App. 34, 771 A.2d 149, cert. denied, 256 Conn. 905, 772 A.2d 599 (2001) (Apprendi does not apply to prior convictions and admissions)."
Poole, 846 So.2d at 375. Therefore, the pretrial notice provision set forth in Poole does not apply to the Habitual Felony Offender Act.
Moreover, Rule 26.6(b)(3)(ii), Ala. R.Crim. P., simply requires that the State give a defendant notice of the prior conviction or convictions upon which it intends to rely at a reasonable time before the sentencing hearing. Therefore, the State was not required to give the appellant pretrial notice of its intent to enhance his sentence pursuant to the Habitual Felony Offender Act. Accordingly, the trial court properly sentenced the appellant as a habitual offender.

II.
The appellant also argues that the trial court erroneously denied his motion for a continuance. Specifically, he contends that the trial court should have granted the motion so he could employ a ballistics expert who allegedly would have supported his claim that the gun accidentally discharged.
"`It is well settled that a motion for a continuance is addressed to the sound discretion of the trial court and that, absent a showing of abuse of that discretion, the trial court's decision on the matter will not be overturned on appeal. Arnold v. State, 601 So.2d 145 (Ala.Cr.App.1992); see generally cases cited at 14 Ala. Digest 2d § 586.
"`To warrant a continuance on the ground that a witness is absent, it must be shown that the expected testimony of the witness is material and competent, that there is a probability that the evidence will be forthcoming if the case is continued, and that the moving party exercised due diligence to secure the evidence. Ex parte Saranthus, 501 So.2d 1256 (Ala.1986). Material evidence means "[e]vidence which has an effective influence or bearing on questions in issue." Black's Law Dictionary 976 (6th ed.1990). "Simply put, a `material' fact is one that would matter in the trial on the merits." Sumner v. Sumner, 664 So.2d 718, 723 (La.App.1995). It must be shown that substantially favorable testimony would be given by the witness and that the denial of a continuance would materially prejudice the defendant. Whitehead v. State, 429 So.2d 641 (Ala.Cr.App. 1982). In addition, it must be established that the expected testimony is not merely cumulative or in the nature of impeachment, and the motion for a continuance must not be made merely for purposes of delay. Mitchell v. Moore, 406 So.2d 347 (Ala.1981); Malone v. State, 659 So.2d 1006 (Ala. Cr.App.1995); McClellan v. State, 628 *598 So.2d 1026 (Ala.Cr.App.1993); Prince v. State, 623 So.2d 355 (Ala.Cr.App. 1992).
"`The appellant made no showing as to what the witness's testimony would be if he were present and testified. The refusal to grant a continuance because a witness will be absent is not error if there is no showing of what the witness would testify to. Smith v. State, 368 So.2d 298 (Ala.Cr. App.1978), writ quashed, 368 So.2d 305 (Ala.1979); Castona v. State, 17 Ala.App. 421, 84 So. 871 (1920). Thus, the appellant failed to establish that the expected testimony would be material and competent, that it would be substantially favorable to him, that it would not be merely cumulative or in the nature of impeachment, or that the denial of the continuance would be prejudicial to him.'
"Smith v. State, 698 So.2d 189, 205 (Ala. Crim.App.1996), aff'd, 698 So.2d 219 (Ala.), cert. denied, 522 U.S. 957, 118 S.Ct. 385, 139 L.Ed.2d 300 (1997) (emphasis added)."
Woodson v. State, 794 So.2d 1226, 1228 (Ala.Crim.App.2000).
In his motion for a continuance, the appellant alleged only that he "intend[ed] to employ a ballistics expert to testify in this case." (C.R. 19.) However, he did not make any showing as to what evidence the ballistics expert would present or that such evidence would be material to his case. Also, he did not show that he had exercised due diligence to obtain a ballistics expert. Therefore, the trial court properly denied the appellant's motion for a continuance.

III.
The appellant further argues that "the indictment does not state a required element of mental culpability." (Appellant's brief at p. 9.) The indictment alleged that the appellant
"did, unlawfully shoot or discharge a firearm, explosive or other weapon which discharges a dangerous projectile, to-wit: a rifle, into an unoccupied dwelling, building, railroad locomotive, railroad car, aircraft, automobile, truck or watercraft, to-wit: an unoccupied vehicle, in violation of Section 13A-11-61 of the Code of Alabama, against the peace and dignity of the State of Alabama."
(C.R. 1.) In Sullens v. State, 878 So.2d 1216, 1220-28 (Ala.Crim.App.2003), we addressed a similar contention as follows:
"Section 13A-11-61, Ala.Code 1975, provides:
"`(a) No person shall shoot or discharge a firearm, explosive or other weapon which discharges a dangerous projectile into any occupied or unoccupied dwelling or building or railroad locomotive or railroad car, aircraft, automobile, truck or watercraft in this state.
"`(b) Any person who commits an act prohibited by subsection (a) with respect to an occupied dwelling or building or railroad locomotive or railroad car, aircraft, automobile, truck or watercraft shall be deemed guilty of a Class B felony as defined by the state criminal code, and upon conviction, shall be punished as prescribed by law.
"`(c) Any person who commits any act prohibited by subsection (a) hereof with respect to an unoccupied dwelling or building or railroad locomotive or railroad car, aircraft, automobile, truck or watercraft shall be deemed guilty of a Class C felony as defined by the state criminal code, and upon conviction, shall be punished as prescribed by law.'
*599 "The indictments track the language of § 13A-11-61(a), Ala.Code 1975. However, that statute does not include a specific culpable mental state. Therefore, we must determine whether a violation of § 13A-11-61, Ala.Code 1975, is a strict liability offense.
"Section 13A-2-4(b), Ala.Code 1975, provides:
"`Although no culpable mental state is expressly designated in a statute defining an offense, an appropriate culpable mental state may nevertheless be required for the commission of that offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, states a crime of mental culpability.'
"(Emphasis added.) The Commentary to § 13A-2-4, Ala.Code 1975, states:
"`Subsection (b) explicitly states a policy adverse to arbitrary use of "strict liability" concepts. An express statement is required in the statute defining the offense if strict liability is being imposed.'
"(Emphasis added.) Although § 13A-11-61, Ala.Code 1975, does not describe a culpable mental state, it also does not expressly state that discharging a firearm into an occupied vehicle is a strict liability offense. Furthermore, § 13A-11-61, Ala.Code 1975, was enacted in 1984, and we presume that the Legislature was aware of § 13A-2-4, Ala.Code 1975, and chose not to make the offense a strict liability offense. See Ex parte Phillips, 771 So.2d 1066 (Ala.2000). Therefore, we conclude that discharging a firearm into an occupied vehicle is not a strict liability offense.
"We must next attempt to ascertain what mental state is required to commit the offense of discharging a firearm into an occupied vehicle. In this regard, § 13A-2-2, Ala.Code 1975, provides:
"`The following definitions apply to this Criminal Code:
"`(1) Intentionally. A person acts intentionally with respect to a result or to conduct described by a statute defining an offense, when his purpose is to cause that result or to engage in that conduct.
"`(2) Knowingly. A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of that nature or that the circumstance exists.
"`(3) Recklessly. A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates a risk but is unaware thereof solely by reason of voluntary intoxication, as defined in subdivision (e)(2) of Section 13A-3-2, acts recklessly with respect thereto.
"`(4) Criminal negligence. A person acts with criminal negligence with respect to a result or to a circumstance which is defined by statute as an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur *600 or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation. A court or jury may consider statutes or ordinances regulating the defendant's conduct as bearing upon the question of criminal negligence.'
"In Ex parte Edwards, 816 So.2d 98 (Ala.2001), the Alabama Supreme Court faced the task of determining what mental state is required to commit the offense of vehicular homicide, as set forth in § 32-5A-192, Ala.Code 1975. Section 32-5A-192(a), Ala.Code 1975, provides, in pertinent part:
"`Whoever shall unlawfully and unintentionally cause the death of another person while engaged in the violation of any state law or municipal ordinance applying to the operation or use of a vehicle, or vessel, as defined in Section 33-5-3, or to the regulation of traffic or boating, shall be guilty of homicide when the violation is the proximate cause of the death.'
"(Emphasis added.) The supreme court determined the following:
"`We conclude that the trial court's initial reservations about tying the requisite mental state to the word "unlawfully" were sound. We endorse the "Use Note on Mens Rea Element" that accompanies the Alabama pattern jury instruction applicable to § 32-5A-192; that note states that "unintentional" is not defined in the Code but that the committee drafting the instruction assumes that word to refer to all forms of mens rea except that described by the word "intentional." The Use Note then refers to the previously referenced defined terms governing mens rea elements  "intentionally," "knowingly," "recklessly," and "criminal negligence."11 Then, the Use Note correctly concludes:
"`"The judge should insert the appropriate mens rea element considering the indictment and the evidence before the court. `There are few, if any, strict liability offenses in this Criminal Code....' Ala.Code § 13A-2-3 Commentary. See also § 13A-2-4(b)."
"`Alabama Pattern Jury Instructions: Criminal, 14-4 to 14-6 (3d ed.1994).
"`11Because § 32-5A-192(b) uses the word "unintentionally," § 13A-2-2(1), defining "intentionally," has no field of application.'
"Edwards, 816 So.2d at 107.
"Unlike the vehicular homicide statute, § 13A-11-61, Ala.Code 1975, does not expressly exclude intentional conduct. In fact, it does not exclude any of the states of mental culpability set forth in § 13A-2-2, Ala.Code 1975. As did the Alabama Supreme Court in Edwards, we interpret the fact that the statute does not specifically exclude any states of mental culpability to be an indication of the Legislature's intent to include any of the states of mental culpability set forth in § 13A-2-2, Ala.Code 1975. Therefore, we conclude that the offense of discharging a firearm into an occupied vehicle can be committed intentionally, knowingly, recklessly, or with criminal negligence.
"Finally, we must determine whether the trial court erred when it denied the appellants' motions to dismiss the indictments based on the fact that they did not allege a culpable mental state. For the reasons set forth below, we conclude that it did not.
*601 "In Duncan v. State, 624 So.2d 1084, 1087-88 (Ala.Crim.App.1993), we addressed a similar issue as follows:
"`The appellant maintains that the indictment failed to charge an offense because it did not sufficiently inform her of what she was called upon to defend. The indictment in this case charged that the appellant,
"`"a parent, guardian or other person legally charged with the care or custody of Kassie Larene Duncan, a child less than eighteen (18) years of age, did fail to exercise reasonable diligence in the control of Kassie Larene Duncan so as to prevent Kassie Larene Duncan from becoming a dependent, as defined [in] Section 12-15-1 of the Code of Alabama, by such conduct more particularly described as knowingly leaving said child in an abusive environment ... in violation of Section 13A-13-6 of the Code of Alabama.'" CR. 1-2.
"`Section 13A-13-6 provides, in pertinent part:
"`"(a) [A] man or woman commits the crime of endangering the welfare of a child when:
"`"....
"`"(2) [H]e or she, as a parent... of a child less than 18 years of age, fails to exercise reasonable diligence in the control of such child to prevent him or her from becoming a `dependent child' ... as defined in section 12-15-1."
"`Section 12-15-1(10) provides that a "dependent child" is one
"`"a. Who, for any reason, is destitute, homeless or dependent on the public for support; or
"`"b. Who is without a parent or guardian able to provide for his support, training or education; or
"`"c. Whose custody is the subject of controversy; or
"`"d. Whose home, by reason of neglect, cruelty or depravity on the part of his parent, parents, guardian or other person in whose care he may be, is an unfit and improper place for him; or
"`"e. Whose parent, parents, guardian or other custodian neglects or refuses, when able to do so or when such service is offered without charge, to provide or allow medical, surgical or other care necessary for such child's health or well-being; or
"`"f. Who is in such condition or surroundings or is under such improper or insufficient guardianship or control as to endanger his morals, health or general welfare; or
"`"g. Who has no proper parental care or guardianship; or
"`"h. Whose parent, parents, guardian or custodian fails, refuse[s] or neglect[s] to send such child to school in accordance with the terms of the compulsory school attendance laws of this state; or
"`"i. Who has been abandoned by his parents, guardian or other custodian; or
"`"j. Who is physically, mentally or emotionally abused by his parents, guardian or other custodian or who is without proper parental care and control necessary for his well-being because of the faults or habits of his parents, guardian or other custodian or their neglect or refusal, when able to do so, to provide them; or
"`"k. Whose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child; or

*602 "`"l. Who has been placed for care or adoption in violation of the law; or
"`"m. Who for any other cause is in need of the care and protection of the state; and
"`"n. In any of the foregoing, is in need of care or supervision."
"`The appellant claims that the indictment was defective because the allegation that she failed to prevent her child from becoming a dependent, "by such conduct more particularly described as knowingly leaving said child in an abusive environment" did not specifically track any of the fourteen alternatives found in subsections (a) through (n) of § 12-15-1(10), defining a "dependent child."
"`The appellant is correct that the phrase "knowingly leaving said child in an abusive environment" is not in verbatim correspondence with any one of the fourteen alternatives of § 12-15-1(10). Instead, the phrase appears to fit several of the statutory subsections, especially parts (d), (f), and (j).
"`The indictment, however, need not have specified which of the § 12-15-1 subsections was applicable in order to have charged an offense. Generally, it is "sufficient to charge the elements of the statutory offense in the words of the statute [here, § 13A-13-6], provided the statute prescribe[s] with definiteness the constituent elements of the offense." Ex parte Harper, 594 So.2d 1181, 1183 (Ala.1991). The allegation that the appellant "fail[ed] to exercise reasonable diligence in the control of Kassie Larene Duncan so as to prevent Kassie Larene Duncan from becoming a dependent, as defined [in] Section 12-15-1 of the Code of Alabama," tracked the language of § 13A-13-6, and was itself legally sufficient.
"`The fact that the indictment did not specify which of the § 12-15-1 alternatives was applicable did not render it fatally defective. An indictment that tracks the language of a statute that incorporates a word or phrase "defined by law" in another statute need not further clarify the incorporated word or phrase. See Inmon v. State, 585 So.2d 261, 263 (Ala. Cr.App.1991). This indictment stated an offense without alleging which of the § 12-15-1 subsections was applicable, and the appellant's motion to dismiss the indictment was correctly denied.
"`While the appellant would have been, on timely motion, entitled to a more definite statement of the charge against her, she made no such motion "prior to the entry of her plea." See Rule 13.2(e), A.R.Crim. P. Compare Ex parte Harper, 594 So.2d at 1183 n. 2 (wherein the Alabama Supreme Court observed that "Rule 13.2(e), A.R.Crim. P., provided th[e] defendant, had he requested it before joining issue on the indictment, the right to move for a more definite statement of the charge. Had such a procedure been available in Gayden [v. State, 262 Ala. 468, 80 So.2d 501 (1955) (`a leading case on the sufficiency of an indictment')], it appears that the result reached there would have been different").
"`The appellant in fact received a more definite statement of the charge when the trial court instructed the jury that it should measure the appellant's conduct against the definition of "dependent child" contained in Ala. Code 1975, § 12-15-1(10)(f): a child "[w]ho is in such condition or surroundings or is under such improper *603 or insufficient guardianship or control as to endanger his morals, health or general welfare." R. 428. The appellant entered no objection to this portion of the court's charge. Because subsection (f) conforms to the evidence in this case, and because there is absolutely no indication that the appellant was misled in making her defense to the indictment charging that she "knowingly le[ft her] child in an abusive environment," we find that, even if any error had been preserved, it would have been harmless.'
"Subsequently, in Hunt v. State, 642 So.2d 999, 1022-26 (Ala.Crim.App.1993), aff'd, 642 So.2d 1060 (Ala.1994), this court again addressed a similar issue as follows:
"`Hunt maintains that the trial court committed reversible error in failing to sustain his motion to dismiss the indictment. This issue is preserved for our review. In a supplement to his pretrial motion to dismiss, Hunt alleged that the indictment was "insufficient to charge a criminal offense in that it fails to allege that Hunt knowingly or willfully violated § 36-25-5, Ala.Code (1975), as required by § 36-25-27, Ala.Code (1975)." C.R. 485-486. In addition, Hunt filed a motion for more definite statement pursuant to Rule 13.2(e), A.R. Cr. P. in which this issue was presented. C.R. 477, 481. In response to this motion, the Attorney General filed a lengthy written response with extensive exhibits. C.R. 543-586.
"`Appellate courts review the legal sufficiency of indictments de novo. United States v. Schmidt, 947 F.2d 362, 369 (9th Cir.1991).
"`"The Federal Rules of Criminal Procedure require that an indictment be a `plain, concise, and definite written statement of the essential facts constituting the offense charged.' An indictment need only contain those facts and elements of the alleged offense necessary to inform the accused of the charge so that she may prepare a defense and invoke the Double Jeopardy Clause when appropriate. Courts will normally find an indictment insufficient only if it fails to state a material element of the offense.
"`"In determining whether an indictment sufficiently informs the defendant of the offense, courts give the indictment a common sense construction and generally will uphold an indictment even if it contains a technical error or omission. Validity of the indictment turns on whether it conforms to minimum constitutional standards, not whether the indictment could be framed more satisfactorily. Although an indictment that tracks the statutory language defining an offense is usually sufficient, reliance on statutory language alone will not cure a fatal defect in an indictment.
"`". . . . The availability of a bill of particulars will not cure an indictment that omits an essential element of the offense."
"`Daniel F. McInnis et al., Project, Twenty-Second Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1991-1992, 81 Geo. L.J. 853, 1076-1081 (1993) (footnotes omitted).
"`The indictment charged in pertinent part that Hunt
"`"while a public official or employee, to wit: the Governor of the State of Alabama, did use an official position or office, to wit: the Office *604 of the Governor of the State of Alabama, to obtain direct personal financial gain, to wit: two hundred thousand dollars ($200,000) in lawful currency and/or coinage of the United States of America and/or checks, a better description of which is unknown to the Grand Jury, for himself or his family or any business with which he or a member of his family is associated, said use and gain not being specifically authorized by law in violation of Section 36-25-5 of the Code of Alabama, against the peace and dignity of the State of Alabama." C.R. 26.
"`The statute under which Hunt was indicted, Ala.Code 1975, § 36-25-5(a), provides:
"`"No public official or employee shall use an official position or office to obtain direct personal financial gain for himself, or his family, or any business with which he or a member of his family is associated unless such use and gain are specifically authorized by law."
"`Here, the indictment parroted the language of § 36-25-5(a). However, the penalty for this conduct is prescribed by § 36-25-27(a)(1) which requires that the conduct be "knowingly or willfully" committed. Section 36-25-27(a)(1) provides:
"`"Any person subject to this chapter who knowingly or willfully violates any provisions of this chapter other than the requirements of financial and lobbying disclosure shall be found guilty of a felony and shall be fined not more than $10,000.00 or less than $2,001.00, or shall be imprisoned for not more than 10 years but not less than two years or any combination thereof." (Emphasis added).
"`It is undisputed, both at trial and on appeal, that "knowingly or willfully" is an element of the offense defined in § 36-25-5(a).
"`....
"`In [Ex parte] Harper, [594 So.2d 1181 (Ala.1991)], the Alabama Supreme Court held that an indictment alleging that the defendant "unlawfully" distributed a controlled substance was not void for failing to allege that the distribution was "knowingly" done. The Court recognized that knowledge was an element of the offense which should have been alleged in the indictment, but it held that the defendant had failed to raise a timely objection to that omission from the charge. The Court decided that "[e]ven if [the defendant] had a valid objection to the statement of the charge, and we find that he did not have a valid objection in this case, he failed to raise an objection timely." Harper, 594 So.2d at 1194 (emphasis added).
"`The court apparently had two reasons for determining that the defendant "did not have a valid objection" to the Harper indictment, despite the omission of the knowledge allegation. First, the court found it "important," 594 So.2d at 1182, that "the procedure for preferring an indictment was governed by the provisions of Temporary Rule 15.2 [now Rule 13.2, A.R. Cr. P.]." Under that rule, "[t]he indictment or information shall be a plain, concise statement of the facts in ordinary language sufficiently definite to inform a defendant of common understanding of the offense charged and with that degree of certainty which will enable the court, upon conviction, to pronounce proper judgment."

*605 "`"The general rule in Alabama, even before the adoption of Temporary Rule 15 (now Rule 13), was that it was sufficient to charge the elements of the statutory offense in the words of the statute, provided the statute prescribed with definiteness the constituent elements of the offense. Ex parte Allred, 393 So.2d 1030 (Ala.1980); see, also, cases collected at 12 Ala. Dig., Indictment and Information, Key No. 110(3). The crucial question, of course, is whether the indictment sufficiently apprises the accused with reasonable certainty of the nature of the accusation made against him so that he may prepare his defense, that he may be protected against a subsequent prosecution for the same offense. See Hochman v. State, 265 Ala. 1, 91 So.2d 500 (1956), in which the Court distinguished Gayden v. State, 262 Ala. 468, 80 So.2d 501 (1955), a leading case on the sufficiency of an indictment, in which a divided Court held that two counts of an indictment against Gayden were defective and subject to a demurrer."
"`Harper, 594 So.2d at 1183. The Court further noted that it "has liberalized criminal pleading and has provided a method for defendants to obtain a more definite statement of the charges [pursuant to Rule 13.2, A.R. Cr. P.]." Harper, 594 So.2d at 1183.
"`Second, the court found that Temporary Rule 15.5(c)(2) [now Rule 13.5(c)(2)] provides for a "harmless error" review of a defective charging instrument.
"`"The Court of Criminal Appeals correctly held, in Stewart [v. State, 580 So.2d 27 (Ala.Cr.App.1990)], that if a statute requires that the offense be `knowingly' committed, then the indictment should allege that it was so committed, and if an objection to the indictment is raised by the trial court or the defendant `during the pendency of the proceeding,' the indictment is defective and would be subject to dismissal, unless otherwise provided for in Temporary Rule 15.5(c)(2) (now Rule 13.5(c)(2)), which states, in part, that `[n]o charge shall be deemed invalid, nor shall the trial, judgment, or other proceedings thereon be stayed, arrested, or in any manner affected, for any defect or imperfection in the charge which does not tend to prejudice the substantial rights of the defendant upon the merits.'
"`". . . . Even if he had a valid objection to the statement of the charge, and we find that he did not have a valid objection in this case, he failed to raise an objection timely.
"`"Based on the foregoing, we are clear to the conclusion that the defendant's constitutional right `to demand the nature and cause of the accusation' (Art. 1, § 6, Const. of Ala.1901) has been fulfilled in this case. The indictment is not void for failing to allege that the offense was committed `knowingly.'
"`"This opinion should not be construed, however, as stating that the State may not be required to prove that the defendant knew of the presence of a controlled substance,.... [K]nowledge must be proved in order to establish that an offense was committed.....
"`"Based on the above, we hold that the indictment was not void for *606 its failure to allege that the distribution of the controlled substance was `knowingly' done. We further hold that the petitioner's objection was untimely, because it was not made `during the pendency of the proceeding.'" (Emphasis added).
"`Harper, 594 So.2d at 1194-95.
"`From the above discussion we draw the following conclusions: 1) Knowledge or willfulness is an element of the offense defined in Ala. Code 1975, § 36-25-5. 2) Under Davis [v. State, 68 Ala. 58 (1880)] supra, knowledge or willfulness should have been alleged in the indictment. 3) After the adoption of Rule 13, A.R. Cr. P. and the opinion of the Alabama Supreme Court in Harper, the failure to allege criminal intent in an indictment does not necessarily render an indictment void and in some cases does not even render it objectionable even in those cases where criminal knowledge is necessary for the proof of the crime charged.
"`Frankly, Harper raises many more questions than it answers. However, this Court is bound by the decisions of the Alabama Supreme Court. Ala.Code 1975, § 12-3-16.
"`We conclude that Ex parte Harper... controls the result in this case. Hunt was given a more definite statement of the charges against him, and the State presented evidence from which the factfinder could infer that Hunt committed the offense knowingly and wilfully. Therefore, any imperfection in the indictment did not "tend to prejudice [Hunt's] substantial rights upon the merits." Rule 13.5(c)(2), A.R. Cr. P.'
"Finally, in Ex parte Edwards, 816 So.2d 98, 109 (Ala.2001), the Alabama Supreme Court, addressing a conviction under the vehicular homicide statute, stated: `Edwards's indictment did not describe a necessary culpable mental state, and the court refused her request for an instruction on a culpable mental state.' As the appellants concede, `Edwards stands for the proposition that the trial court could have cured the indictment in its instructions to the jury.' (Appellants' brief at p. 26.)
"The indictments in this case substantially followed the language of § 13A-11-61(a), Ala.Code 1975.3 In light of Alabama's liberalized rules of pleading, we conclude that the indictments sufficiently apprised the appellants of the nature of the charges against them so that they could prepare their defenses. Also, the appellants could have requested more definite statements of the charges against them, as did the appellant in Hunt. See also Duncan. Further, as in Duncan, the appellants received more definite statements when the trial court instructed the jury that it must determine whether the appellants acted `without lawful justification.' (R. 492, 502.) Finally, the record does not indicate that the appellants were misled in preparing their defenses to the indictments. In fact, from the record, it appears that they thoroughly prepared and presented their defenses  defense of others and self-defense  to the charges. Therefore, we conclude that any imperfection in the indictments did not tend to prejudice the substantial rights of the appellants on the merits.
"3Unlike the indictment in Ex parte Lewis, 811 So.2d 485 (Ala.2001), which the appellants cite, the indictments in this case did not, by omitting the culpable mental state, permit the appellants to be convicted of a greater offense *607 while charging them only with a lesser offense."
(Footnote omitted.)
Similarly, because the indictment in this case substantially followed the language of § 13A-11-61(a), Ala.Code 1975, we conclude that it sufficiently apprised the appellant of the charge against him so he could prepare a defense. Also, the appellant could have requested a more definite statement of the charge against him. See Hunt; Duncan. Finally, the record does not indicate that the appellant was misled in preparing his defense. In fact, it appears from the record that the appellant thoroughly prepared and presented his defense  i.e., that the shooting was accidental. Therefore, we conclude that any imperfection in the indictment did not tend to prejudice the substantial rights of the appellant on the merits.

IV.
The appellant additionally argues that the trial court erroneously granted the State's Batson[1] motion as to veniremembers 8 and 9 because he allegedly gave valid race- and gender-neutral reasons for those strikes.
"When the trial court has required a party to state reasons for the strikes, that party must articulate reasons that are clear, specific, and legitimate, that relate to the particular case, and that are nondiscriminatory. Ex parte Bird, 594 So.2d 676, 679 (Ala.1991); Carter v. State, 603 So.2d 1137 (Ala.Crim.App. 1992); Adkins v. State, 639 So.2d 515 (Ala.Crim.App.1993), aff'd, 639 So.2d 522 (Ala.), cert. denied, 513 U.S. 851, 115 S.Ct. 151, 130 L.Ed.2d 90 (1994). After race-neutral reasons have been articulated, the moving party can offer evidence showing that those reasons are really a sham or pretext. Ex parte Branch, 526 So.2d at 625. On appeal, the trial court's ruling on the question whether the responding party offered legitimate race-neutral reasons will not be overturned unless it is clearly erroneous. K.S. v. Carr, 618 So.2d 707, 710 (Ala. 1993), citing Ex parte Branch, 526 So.2d at 622."
Ex parte Brooks, 695 So.2d 184, 190 (Ala. 1997).
Defense counsel stated that she had struck veniremembers 8 and 9 because they allegedly had been laughing and talking and had not been attentive while she asked questions during the voir dire proceedings. However, the trial court indicated that it had watched the entire venire during the voir dire proceedings. Apparently, it did not observe the conduct about which counsel complained because it told counsel she should have brought any such conduct to his attention. "The trial court is in a better position than the appellate court to distinguish bona fide reasons from sham excuses." Heard v. State, 584 So.2d 556, 561 (Ala.Crim.App.1991). Also, the trial court is in the best position to evaluate the demeanor of the veniremembers. See Kuk v. State, 602 So.2d 1213 (Ala. Crim.App.1992). Based on the record before us, we do not conclude that the trial court's finding was clearly erroneous.

V.
Next, the appellant argues that the trial court erroneously refused to instruct the jury on reckless endangerment. During the charge conference, he requested such an instruction, and the trial court refused his request. However, the appellant did not object to the trial court's refusal to give the requested instruction either at that time or after the trial court's *608 oral charge. In fact, after the trial court had completed its oral charge, the appellant stated that he was satisfied with the court's oral charge.
"No party may assign as error the court's ... failing to give [an] instruction... unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he or she objects and the grounds of the objection."
Rule 21.3, Ala. R.Crim. P. Because the appellant did not object to the trial court's refusal to give his requested instruction, he did not preserve this argument for our review. See Rule 21.3, Ala. R.Crim. P.; Bullock v. State, 697 So.2d 66 (Ala.Crim. App.1997).

VI.
Finally, the appellant argues that the trial court erroneously admitted evidence about his collateral bad acts. However, he did not object at the time the evidence was admitted. Rather, he raised this issue for the first time in his "Motion for Judgment of Acquittal or in the Alternative, Motion for New Trial or Arrest of Judgment." Absent a timely and sufficient objection at trial, a motion for a new trial will not preserve an issue for appellate review. See Hamrick v. State, 548 So.2d 652 (Ala.Crim.App.1989). Therefore, this argument is not properly before this court.
For the above-stated reasons, we affirm the trial court's judgment.
AFFIRMED.
McMILLAN, P.J., concurs; SHAW, J., concurs in the result, with opinion, which COBB, J., joins; WISE, J., concurs in the result.
SHAW, Judge, concurring in the result.
I believe that this case is distinguishable from Sullens v. State, 878 So.2d 1216 (Ala. Crim.App.2003), an opinion in which Judge Cobb and I concurred in part and dissented in part, in that, here, the trial court constructively amended the indictment by charging the jury on the necessary culpable mental state. In Sullens, the indictment did not allege, and the jury was not instructed on, any culpable mental state. The Alabama Supreme Court has held that a trial court's instructions to the jury may constitute an amendment to the indictment. See Ash v. State, 843 So.2d 213 (Ala.2002). See also Gamble v. State, 758 So.2d 1125 (Ala.Crim.App.1999); and Floyd v. State, 659 So.2d 961 (Ala.Crim. App.1994). In Hampton v. State, 815 So.2d 571 (Ala.Crim.App.2001), this Court held that an indictment, which is otherwise sufficient, may be amended, even without the consent of the defendant, to supply or correct an allegation relating to the defendant's intent or guilty knowledge. In the present case, the trial court instructed the jury that it could not convict the appellant unless it found that he had intended to shoot into the vehicle.[2] The record indicates that the appellant's defense centered on his argument that the gun had fired accidentally during a struggle. Based on an examination of the record and the briefs, it appears that the appellant cannot, and does not, argue that he was in any way prejudiced by the trial court's amendment of the indictment. The appellant was fully aware of the nature of the charge against him, and there is no indication that he was unable to prepare and present a defense. Because the amendment did not charge an additional or different offense, and because there was no prejudice to any of the appellant's substantial rights, no *609 reversible error occurred when the trial court constructively amended the indictment. Therefore, I concur in the result reached by the majority.
COBB, J., concurs.
NOTES
[1] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
[2] The appellant submitted several requested jury instructions on intent and knowledge. Those requested instructions were refused by the trial court.